**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **Michael Kascsak**, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | No. 1:23-cv-1373-DII |
| § | |
| **Expedia, Inc.**, and § | |
| **Michael Davis Velasco,** § | |
| § | |
| Defendants. § | |

**DEFENDANTS' (1) MOTION TO DISMISS CLAIMS AGAINST DEFENDANT MICHAEL DAVIS VELASCO FOR LACK OF PERSONAL JURISDICTION AND, (2) MOTION TO DISMISS PLAINTIFF'S 42 U.S.C. § 1981 CLAIM FOR <u>FAILURE TO STATE A CLAIM</u>**

## I. INTRODUCTION

In 2023, Plaintiff Michael Kascsak ("Kascsak") experienced a frustration that many Americans have experienced in their lives: he was not hired for a job he applied for. Specifically, Kascsak sought the position of Head of Global Talent Sourcing at Expedia, Inc. ("Expedia"), but Expedia decided not to hire him after giving him more than fair consideration. Shortly thereafter, Kascsak filed the present Complaint[1] against Expedia and Michael Davis Velasco ("Velasco"), alleging that Expedia's decision not to hire him constitutes discrimination on the basis of his sex (male) and race (white). He asserts claims under Title VII, the Texas Labor Code, and 42 U.S.C. § 1981 against Expedia, and also asserts the 42 U.S.C. § 1981 race discrimination claim individually against Velasco.

Kascsak's Complaint relies heavily on gross mischaracterizations of Expedia's Corporate Inclusion and Diversity policies to create the improper impression that Expedia's policies somehow condone or encourage discrimination. As is clear from the sources that Kascsak himself references in the Complaint, nothing could be further from reality. Expedia, like many other major companies in America—including Kascsak's former employer, Google—proudly seeks to create a more inclusive, equitable, and engaging workplace for everyone through a variety of industry-standard initiatives. Expedia reserves its right to challenge and contest these allegations at a later date, but even taking the allegations in the Complaint as true for purposes of this motion only, Kascsak's Section 1981 claim should be dismissed against Velasco for lack of personal jurisdiction and as against both Defendants for failure to state a claim.

First, the Court lacks personal jurisdiction over Velasco. Velasco is Expedia's Chief People, Inclusion and Diversity Officer, and lives and works in New York. Kascsak alleges that Velasco is subject to specific personal jurisdiction in Texas because he allegedly made the decision, while in New York, not to hire Kascsak—"a white male and Texas resident"—and instead issued

---

[1] On January 10, 2023, Plaintiff filed his First Amended Complaint (Dkt. 8). The Amended Complaint is identical to the original Complaint, except that it substituted Expedia, Inc. as Defendant for Expedia Group, Inc. *See id* at Dkt. 8-20 and Notice of Correction. References to "Compl." are to Plaintiff's First Amended Complaint, Dkt. 8.

an alleged directive "to look for a more diverse candidate." Kascsak's factual claims are incorrect, but regardless, do not establish jurisdiction over Velasco.

The Supreme Court made clear in *Walden v. Fiore* that the exercise of specific personal jurisdiction requires minimum contacts with the forum state and that analysis involves, "the defendant's contacts with the forum itself, not with persons residing there."[2] Here, the sole jurisdictional fact that Kascsak alleges is that Velasco, while in New York, made a hiring decision regarding Kascsak's job application. The only possible connection that Velasco's alleged action has with Texas is the fact that Kascsak happens to reside in Texas. As discussed below, this is precisely the type of ancillary contact that the Supreme Court held was insufficient to satisfy the minimum contacts test for personal jurisdiction.

Second, Kascsak's claim against both Expedia and Velasco for racial discrimination brought pursuant to 42 U.S.C. § 1981 should be dismissed for failure to state a claim. A plaintiff asserting a claim under Section 1981 must allege that discrimination on the basis of race was the "but for" cause of his injury. Consequently, multiple courts—including this one—have held that a complaint alleging multiple bases for discrimination in addition to race fails to state a claim under Section 1981. *See, e.g. Hopkins v. Wayside Sch.,* No. 1:21-CV-0334-RP, 2023 WL 5186881, at *6 (W.D. Tex. Aug. 11, 2023)(notice of appeal filed). Here, Kascsak has expressly stated in the sworn declaration filed with his Complaint that race was not the sole basis for discrimination against him, stating: "**Either my race, my gender, or my age (or perhaps all three) was [ ] weaponized against me**" and "**my race, age and sex worked against me**..."[3] Because Kascsak has expressly admitted that discrimination based on race was *not* the sole basis for his injury, he cannot state a claim under Section 1981.

---

[2] 571 U.S. 277, 290 (2014).

[3] Compl. Ex. A (Dkt. 8-1) at ¶¶ 49, 50.

Accordingly, Defendants request that the Court: (1) dismiss Plaintiff's claim against Velasco in its entirety under Rule 12(b)(2); and (2) dismiss Plaintiff's Section 1981 claim as against both Defendants under Rule 12(b)(6).

## II.    RELEVANT FACTUAL BACKGROUND

In 2023, Kascsak, a Texas resident, applied for the position of Head of Global Talent Sourcing with Expedia. As part of that process, Kascsak interviewed with a number of Expedia employees and managers. *See* Compl. ¶¶ 37-40.

Kascsak's interviews included a remote interview conducted via Zoom with Velasco in May 2023. Compl. ¶5. Kascsak describes his interview with Velasco as "neutral." *Id.* at ¶ 40. In August 2023, Expedia informed Kascsak of its decision not to hire him. Compl. Ex. A ¶ 53. This lawsuit followed.

Velasco resides and works in New York, and his only contact with Kascsak was in the single Zoom interview.  Kascsak makes only one factual jurisdictional allegation specific to Velasco: he alleges that Expedia executive Allison Allen told him that Velasco expressed concern about his "executive leadership (or presence or influence)" and that Velasco "wanted to (paraphrasing) 'search a more in depth and diverse candidate pool' for the role." Compl. Ex. A ¶¶ 46, 48. Based on this alleged comment, Kascsak claims in his Complaint that Velasco made a "directive to look for a more diverse candidate and not hire Kascsak, a white male and Texas resident." Compl. ¶ 11.

Expedia and Velasco categorically deny Kascsak's claims of discrimination, and specifically deny the myriad misstatements in his Complaint. But even accepting Kascsak's factual allegations as true for purposes of this Motion only, Kascsak's factual allegations fail to establish jurisdiction over Velasco, and fail to plausibly state a claim of race discrimination against either Defendant under Section 1981.

### III. ARGUMENT & AUTHORITIES

**A. Kascsak Fails to Establish Personal Jurisdiction over Velasco**

Kascsak's claim against Velasco should be dismissed for lack of specific personal jurisdiction. The law is clear that specific jurisdiction may only be exercised where minimum contacts exist between an out-of-state defendant and the forum. In his Complaint, Kascsak alleges that: "Velasco's relevant conduct for specific jurisdiction here is his directive to look for a more diverse candidate and not hire Kascsak, a white and male Texas resident." Compl. ¶ 11. This allegation is wholly insufficient to satisfy Kascsak's burden of pleading facts sufficient to establish minimum contacts by Velasco in this case.

**1. Standard.**

Kascsak bears the burden of establishing personal jurisdiction over Velasco and must set out a *prima facie* case of personal jurisdiction. *Turner v. Harvard MedTech of Nevada, LLC*, 620 F. Supp. 3d 569, 573 (W.D. Tex. 2022). Where, as here, the long-arm statute of Texas extends to the limits of federal due process, determining whether jurisdiction exists over an out-of-state defendant reduces to the issue of "whether jurisdiction comports with federal due process." *Turner*, 620 F. Supp. 3d at 574 (citing *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990)). The due process analysis focuses on the number and nature of a defendant's contacts with the forum to determine if the defendant has sufficient "minimum contacts" such "that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 316 U.S. 310, 316 (1945).

Because "the plaintiff ultimately bears the burden of showing that the defendant is subject to personal jurisdiction in the forum state," it is up to Kascsak to show that: (1) Velasco has sufficient contacts with the state of Texas and (2) this litigation arises out of those contacts. *See Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).

**2. Kascsak fails to plead a prima facie case of personal jurisdiction.**

Kascsak's single alleged jurisdictional fact against Velasco—his alleged "directive to look for a more diverse candidate and not hire Kascsak, a white and male Texas resident"—is

insufficient to establish jurisdiction over him. Kascsak admits that Velasco's actions presumably took place in New York, where Velasco lives and works. *Id.* But he claims that Velasco's alleged "directive" constitutes sufficient *contact* with Texas because as a Texas resident, Kascsak felt the "effect" of such action in Texas. *See id*. Kascsak's position is without merit.

First, the "effects" test theory on which Kascsak relies has been soundly rejected by the Supreme Court. In its 2014 *Walden v. Fiore* opinion, the Supreme Court stated:

> ***Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum.** Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. **The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.**

571 U.S. 277, 285 (2014)(emphasis added). In *Walden*, the Court squarely held that the required minimum contacts "must be analyzed with regard to the defendant's contacts with the forum itself, not with persons residing there." *Id.* at 277; *see also, e.g. Trois v. Apple Tree Auction Ctr., Inc.,* 882 F.3d 485, 492 n.7 (5th Cir. 2018)(discussing *Walden*)("Basing personal jurisdiction solely on the defendant's knowledge that the effects of the tort would be felt in the forum was improper because the acts were not directed to the forum.").[4]

Second, there is no question that the minimum contacts test has not been satisfied in this case. The minimum contacts test requires sufficient contacts with the forum state such that the exercise of jurisdiction does not violate due process. "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State." *Walden*, 571 U.S. at 286 (cleaned up). As the Supreme Court explained in *Walden*, the

---

[4]*See also Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 103 (5th Cir. 2018)("[Plaintiff's] reliance on the 'effects' test of *Calder v. Jones* is unavailing….The Supreme Court recently clarified the form that forum contacts must take in intentional tort cases for the effects to be applicable, reiterating that mere injury to a forum resident is not a sufficient connection to the forum."); *Burkett v. Aztec Well Fam.,* No. MO:20-CV-00052-DC, 2021 WL 2678660, at *2–3 (W.D. Tex. Feb. 1, 2021)("The effects test is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state.").

required minimum contacts are "contacts that the defendant *himself* creates with the forum state." 571 U.S. at 284 (cleaned up).

Kascsak's allegation that Velasco, while in New York, issued a directive to look for more diverse candidates and not hire Kascsak fails to adequately allege the requisite purposeful contacts between Velasco and Texas. Velasco's alleged directive does not contain any reference to geographic scope. Indeed, it does not even mention the State of Texas. Kascsak's allegations do not and cannot connect Velasco with the State of Texas in any meaningful way and thus cannot satisfy the minimum contacts test to subject him to personal jurisdiction here.[5] *See Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.* 24 F.4th 491, 497, 502 (5th Cir. 2022)(affirming the lower court's dismissal for lack of personal jurisdiction because, "although [the defendants'] allegedly tortious conduct may have *affected* [the plaintiff] in Texas, none of this conduct *occurred* in Texas," and because the jurisdictional allegations "rested on nothing but the mere fortuity that [the plaintiff] happens to be a resident of the forum.").

In short, to establish jurisdiction over Velasco in Texas, Kascsak must allege jurisdictional facts showing that Velasco's alleged conduct was connected to Texas, "not just to a plaintiff that live[s] there." *Walden*, 571 U.S. at 288. Kascsak has failed to meet his burden of establishing a *prima facie* showing of jurisdiction, and the Court should dismiss Defendant Velasco from this action for lack of personal jurisdiction under Rule 12(b)(2).

### 3. Intentional torts themselves do not establish personal jurisdiction over out-of-state defendants.

Despite clear Supreme Court authority to the contrary, Kascsak asserts: "In the Fifth Circuit, a well pleaded intentional tort alone confers personal jurisdiction," and relies on *Lewis v. Fresne*, 252 F.3d 359 (5th Cir. 2001)) for this position. Plaintiff's position is without merit.

---

[5] Kascsak cites to *Command-Aire Corp. v. Ontario Mech. Sales and Serv. Inc.* in support of his claim. Compl. ¶ 11 (quoting 963 F.2d 90,94 (5th Cir. 1992)). But *Command-Aire Corp.* recognizes that no single act (no matter how substantial) can establish specific jurisdiction *unless* the "cause of action arises out of a **defendant's purposeful contacts with the forum.**" *Command-Aire Corp.*, 963 F.2d at 94 (emphasis added). Those contacts are simply not present here.

First, *Lewis* is inapposite. Jurisdiction in *Lewis* was not based on a single tortious act, as here, but rather a series of tortious acts that were purposefully directed to the forum state. *See Fundient, LLC v. Johnson Controls, Inc.*, No. 1:22-CV-00284, 2023 WL 2697760, at 5 (W.D. Tex. Jan. 11, 2023), *report and recommendation adopted,* 2023 WL 2709707 (W.D. Tex. Mar. 29, 2023)(noting that the defendant in *Lewis* also prepared and sent loan documents and stock certificates containing fraudulent statements to Texas).

Second, to the extent Plaintiff interprets *Lewis* as setting forth a bright-line jurisdictional rule for intentional torts, it predates (by around 15 years) and would be overruled by the Supreme Court's opinion in *Walden*. Indeed, in the years since *Lewis* was decided, both the Supreme Court and the Fifth Circuit have affirmed dismissals of intentional tort claims based on lack of personal jurisdiction. *See Walden*, 571 U.S. at 288-289 at 288-89; *Danziger*, 24 F.4th at 495.[6]

The question of whether Velasco is subject to specific personal jurisdiction in Texas depends on his minimum contacts with the forum—not whether Plaintiff has brought an intentional tort claim or not. And as set forth above, no minimum contacts exist here.

### 4. The fiduciary shield doctrine prevents the Court from exercising jurisdiction over Velasco.

Kascsak inexplicably spends many pages of his Complaint arguing that the fiduciary shield doctrine does not apply to Velasco. The fiduciary shield doctrine holds that "an individual's transaction of business within the State solely as a corporate officer does not create personal jurisdiction over that individual though the State has in personam jurisdiction over the corporation." *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985). This doctrine is based on "the notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for

---

[6] *See also CJS Sols. Grp., LLC v. Clowers*, No. 1:21-CV-223-RP, 2022 WL 770122, at *5 (W.D. Tex. Mar. 14, 2022), *report and recommendation adopted*, 2022 WL 7768209 (W.D. Tex. June 8, 2022)(finding that intentional tort allegations did not establish jurisdiction because the facts did not support a link between the defendant and the forum state, and specifically noting that the fact that the defendant sent "texts and emails" to the party in the forum state in connection with the dispute was "insufficient to support a finding of specific jurisdiction.").

the benefit of his employer." *Saktides v. Cooper*, 742 F. Supp. 382, 385 (W.D. Tex. 1990)(quoting *Marine Midland Bank v. Miller,* 664 F.2d 899, 902 (2d Cir. 1981). Kascsak's argument is both irrelevant and incorrect.

First, it is not necessary for the Court to determine whether the fiduciary shield doctrine applies here or not. Kascsak alleges that personal jurisdiction exists over Velasco on the sole basis of an alleged "directive" he made in New York. As discussed above, his allegation is insufficient to establish that Velasco had minimum contacts with Texas irrespective of whether the fiduciary shield doctrine applies or not.

Second, to the extent the Court considers this argument, Kascsak is wrong that the fiduciary shield doctrine is not applicable here. Indeed, this doctrine provides yet another independent reason why personal jurisdiction does not exist over Velasco. The only action of Velasco that Kascsak complains of—the alleged directive not to hire him and to expand the interview pool—was taken (if taken) in the course and scope of Velasco's work as a corporate officer of Expedia. Such actions do not confer personal jurisdiction over him in Texas. *See Frankl v. Netopia, Inc.,* No. 3:05-CV-1757-B, 2007 WL 9712232, at *8 (N.D. Tex. Mar. 26, 2007)("Absent more concrete factual allegations suggesting that the Audit Committee Defendants intended to cause injury to Plaintiffs in Texas, the Court is unwilling to subject those Defendants to the jurisdiction of a Texas court simply because each of them, in their capacities as members of the Netopia board, participated in making an employment decision that happened to affect Texas residents.").[7] Because the fiduciary shield doctrine removes all of Velasco's alleged actions from the jurisdictional analysis, the Court need not even conduct a minimum contacts test and could dismiss for lack of personal jurisdiction on the grounds of the fiduciary shield doctrine alone.

---

[7] *See also Meyer v. Mendelson*, No. CIV.A.3:05-CV-1344-M, 2006 WL 66707, at *3 (N.D. Tex. Jan. 11, 2006)("[P]laintiffs have not set forth specific facts or uncontroverted allegations that would serve to eliminate Defendant's fiduciary shield [because] plaintiffs have not sufficiently demonstrated that Defendant, at any relevant time, acted in a capacity other than as CEO.").

Kascsak raises a host of reasons why the fiduciary shield should not apply in this case, but they are all unfounded. He asserts that the doctrine does not apply because (1) he alleges an intentional tort, (2) Velasco's alleged misconduct was motivated by "personal interest," and (3) the doctrine applies only to general, not specific jurisdiction. *See* Compl. ¶¶12-14. He is wrong on all counts.

First, the Fifth Circuit and this Court have firmly rejected the notion that the fiduciary shield doctrine does not apply to intentional torts. *Jonathan Paul Eyewear, Inc. v. Live Eyewear, Inc.*, No. A-12-CA-908-SS, 2013 WL 12090073, at *3 (W.D. Tex. Aug. 5, 2013)(emphasis added)(citing *Panda Brandywine Corp. v. Potomac Elec. Power Co.,* 253 F.3d 865, 870 (5th Cir. 2001))("Plaintiffs contend their intentional tort allegations are sufficient to avoid the fiduciary shield doctrine. The Fifth Circuit rejected this argument in *Panda,* focusing on a plaintiff's obligation to allege specific facts demonstrating purposeful availment even where an intentional tort is alleged.").

Second, Kascsak's suggestion that Velasco was motivated by personal interests because Velasco is allegedly "an openly zealous activist for diversity, equity, and inclusion" (Compl. ¶ 13) is absurd. Kascsak again misstates the record in making such claim.[8] Regardless, courts in the Fifth Circuit require much more, such as a tangible financial or other personal benefit for an executive's personal interest, to defeat the fiduciary shield doctrine. *See, e.g.*, *Greathouse*, 2023 WL 5759250, at *6 (finding the Director and CEO of lender corporation was motivated by personal interest where he "owned 37.8% of outstanding shares" of the company and "personally earned $90,227,080 in dividends as a result" of the unlawful practices he allegedly put into place.).

---

[8] Kascsak cites to Velasco's LinkedIn profile (*see* Compl. ¶ 13), which only states: "At Expedia Group I am fortunate to be able to blend my background and experiences and work with over 15,000 Expedians around the world to create a more inclusive, equitable and engaging workplace." Compl. Ex. C at 2.

Finally, Kascsak is simply wrong that the fiduciary shield doctrine does not apply to specific jurisdiction. *See, e.g. Saktides*, 742 F.Supp. at 387 (finding that the fiduciary shield doctrine operated to preclude specific jurisdiction against the corporate employee.).[9]

Kascsak's protestations regarding the fiduciary shield doctrine amount to nothing more than an attempt to distract from the only relevant question here: whether Velasco had minimum contacts with the forum state. The answer is clear that he does not.

### B. Kascsak Fails to State a Claim under Section 1981

Expedia and Velasco deny that the decision not to hire Kascsak was discriminatory and will present ample evidence of Expedia's legitimate non-discriminatory reasons for the decision. But as a threshold matter, Kascsak's claim for race discrimination under 42 U.S.C. § 1981 against both Expedia and Velasco should be dismissed, because Kascsak fails to plausibly allege that his race was the but-for cause of the failure to hire him. And because it is the only claim asserted against Velasco, even if Velasco were subject to personal jurisdiction in Texas, he should still be dismissed from this case because of Kascsak's failure to state a legally cognizable Section 1981 claim.

#### 1. Pleading standard.

"To withstand a motion to dismiss, a complaint must allege more than labels and conclusions, as a formulaic recitation of the elements of a cause of action will not do. It must state a plausible claim for relief, rather than facts merely consistent with liability." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020)(cleaned up). The court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* But the

---

[9] *See also 21st Century Fin. Servs., Inc. v. Mandelbaum*, No. A-10-CA-803 LY, 2011 WL 3844209, at *7–8 (W.D. Tex. Aug. 30, 2011), *report and recommendation adopted as modified sub nom*, *21st Century Fin. Servs., LLC v. Manchester Fin. Bank*, No. A-10-CA-803-LY, 2011 WL 13108099 (W.D. Tex. Oct. 7, 2011)("Because the Individual Defendants' were merely acting in their corporate capacities on behalf of Manchester Bank in their dealings with Plaintiff, the fiduciary shield doctrine prevents the Court from exercising specific jurisdiction over them.").

Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.*

### 2. Kascsak has failed to allege that race was the "but-for" cause of the decision not to hire him.

Section 1981 provides that: "All persons within the jurisdiction of the United States shall have the same right…to make and enforce contracts…as is enjoyed by white citizens…." And the Supreme Court has held that Section 1981 "affords a federal remedy against discrimination in private employment on the basis of race." 42 U.S.C. § 1981(a); *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459–60 (1975). However, "[t]o prevail, a plaintiff must initially plead and ultimately prove that, **but for race**, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020)(emphasis added).

Even though Kascsak asserts in conclusory fashion that race was the "but-for" cause of Expedia's decision not to hire him, his factual allegations show otherwise. Specifically, in his sworn declaration submitted with his Complaint, Kascsak alleges that race was *not* the but for cause of Expedia's hiring decision. stating: "**Either my race, my gender, or my age (or perhaps all three) was [ ] weaponized against me**" and "**my race, age and sex worked against me**…." Compl. Ex. A ¶¶ 49, 50 (emphasis added).

Kascsak's allegations of multiple potential non-race-based reasons for Expedia's decision not to hire him preclude him from plausibly claiming that his race (white) was the but-for cause of the decision. *See Hopkins v. Wayside Sch.,* No. 1:21-CV-0334-RP, 2023 WL 5186881, at *6 (W.D. Tex. Aug. 11, 2023)(notice of appeal filed)("Hopkins does not claim race was a but-for cause of his injury; **he claims that he was fired at least partially because of his alleged whistleblowing activities. Therefore, he has not sufficiently pled a § 1981 claim**, and the Court will grant Wayside's motion [to dismiss] as to that claim." (emphasis added)).[10]

---

[10] Kascsak's Complaint additionally admits that he was given several non-discriminatory reasons for Expedia's decision: (1) that Lisa Christensen told him "that Allen's TA team was going through a reorganization and speculated the Company might be 'going a different direction with

Following the *Comcast* decision, this Court in *Hopkins* and courts in a number of other jurisdictions have dismissed Section 1981 claims for failing to plausibly assert race as the but-for cause when the plaintiff alleges multiple potential reasons for the alleged discriminatory action. *See, e.g. id*; *McKenzie-El v. Am. Sugar Ref., Inc.*, No. 21-1089, 2021 WL 5412341, at *2 (4th Cir. Nov. 19, 2021)(per curium)(holding that where a plaintiff "explicitly pled that his age, religion, and complaints to human resources were causes of his employer's actions," Rule 12(b)(6) dismissal of a Section 1981 claim for failure to allege but-for causation was appropriate); *Postell v. Fallsburg Libr.*, No. 20-CV-03991 (NSR), 2022 WL 1092857, at *9 (S.D.N.Y. Apr. 8, 2022)(granting the defendant's 12(b)(6) motion on plaintiff's Section 1981 claim because plaintiff's "bundle[d]" allegations of "race, gender, or age" discrimination preclude[d] the Court "from a determination of race as the but-for cause for Defendant's alleged misconducts.").[11]

Kascsak's allegation that the reason for the decision not to hire him was his race, *his age, his sex*, or all three cannot be squared with his conclusory assertion that race was the but-for cause of Expedia's decision.[12] His claim should therefore be dismissed.

---

the role, possibly Director level,'" (Comp. Ex. A ¶ 31), (2) that Christensen said: "The challenge with Director for you is the comp-we couldn't get close enough to your expectations I am afraid" (Compl. Ex. J p. 2) and (3) that Allison Allen informed him of "Davis Velasco's concern…about my 'executive leadership (or presence or influence)" (Compl. Ex. A ¶ 46).

[11] *See also Adetoro v. King Abdullah Acad.*, 585 F. Supp. 3d 78, 85 (D.D.C. 2020)(granting the defendant's motion to dismiss plaintiff's Section 1981 claim, with prejudice: "[I]t is impossible for the Court to find that race was the 'but for' cause of the Former Employees' termination. Accepting the Former Employees' own allegations as true, it is equally plausible that they were terminated for not being Sunni Muslim, not being from Saudi Arabia, or both."); *Bethea v. First-Citizens Bank & Tr. Co.*, No. 2:22-CV-02790-BHH, 2023 WL 6639774, at *12 (D.S.C. July 26, 2023), *report and recommendation adopted*, 2023 WL 6284425 (D.S.C. Sept. 27, 2023)("[B]ecause Plaintiff explicitly alleged that the pay disparity and failure to promote were the results of both race discrimination and sex discrimination…Plaintiff has not alleged that race was the 'but for' cause of these actions, as required to state a § 1981 claim.").

[12] The fact that Kascsak relies on the very same allegations to support *both* his claim that he was discriminated against because of his sex *and* his claim that he was discriminated against because of his race (*compare* Counts 1, 2 and 3 (race) with Counts 4 and 5 (sex)) further highlights his inability to plausibly allege that his race—as opposed to his sex, age or some other reason—is the but-for cause of the decision not to hire him. *See, e.g. Arora v. Nav Consulting Inc.*, No. 21 C 4443, 2022 WL 7426211, at *3 (N.D. Ill. Oct. 13, 2022)(dismissing plaintiff's Section 1983

## IV. CONCLUSION & PRAYER

The Court should dismiss this case against Defendant Velasco under Rule 12(b)(2) for lack of subject matter jurisdiction. Further, because Plaintiff fails to plausibly assert a 42 U.S.C. § 1981 claim against both Defendant Velasco and Expedia, such claim should be dismissed under Rule 12(b)(6).

Dated: January 22, 2024.

---

claim because plaintiff "alleged multiple discrimination theories as the 'but for' cause" of the alleged misconduct and noting that "[plaintiff] does not parse the specifics of his race-based claim. The first amended complaint does not explain which alleged employment actions were motivated by race-based animus (versus ethnicity or national origin) or how those actions were race-based.").

                                        Respectfully submitted,

                                        SCOTT DOUGLASS & MCCONNICO LLP
                                        303 Colorado Street, Suite 2400
                                        Austin, Texas 78701
                                        (512) 495-6300 Telephone
                                        (512) 495-6399 Facsimile

By: _____
                                        David D. Shank
                                        Texas Bar No. 24075056
                                        dshank@scottdoug.com
                                        Amy Lee Dashiell
                                        Texas Bar No. 90001564
                                        adashiell@scottdoug.com
                                        Robert P. Earle
                                        Texas Bar No. 241245566
                                        rearle@scottdoug.com

                                       *Counsel for Defendants*

## CERTIFICATE OF SERVICE

      I certify that on January 22, 2024, I served a copy of the foregoing on the parties listed below by CM/ECF.

Ashely Courtney, Esq.
Alexander Liebmann, Esq.
Max Schreiber
LIEBMANN & LIEBMANN, P.A.
714 N. Spring St.
Pensacola, FL 32501
(845) 270-3843

*Counsel for Plaintiff Michael Kascsak*

                                        */s/ Amy Lee Dashiell*
                                        Amy Lee Dashiell