UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| MICHAEL KASCSAK, | |
| *Plaintiff*, | |
| v. | Case No.: 1:23-cv-01373-DII |
| EXPEDIA, INC., AND MICHAEL DAVIS VELASCO, | |
| *Defendants*. | |

## PLAINTIFF MICHAEL KASCSAK'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM

When a job candidate is told he's a company's "top pick" and gets offered a job, for a willing candidate normally the deal is done—but if the company changes its mind, 42 U.S.C. § 1981 requires race not be a "but-for" cause why. *Comcast Corp. v. NAACP*, 140 S. Ct. 1009, 1013 (2020). But that's what Plaintiff Michael Kascsak alleges happened to him in his complaint. *See* Kascsak's First Amended Complaint ("Comp."), Dkt.8 ¶¶ 95-108. After Defendant Expedia, Inc.'s CEO committed the Company to "do better in terms of our own diversity" in 2020, Defendant Michael Davis Velasco, the Company's Chief Diversity, People, and Inclusion Officer, implemented a set of race and sex hiring quotas for the Company. Comp. ¶¶ 21, 24-29. And from 2021-22, Expedia's racial diversity in senior-level hiring *decreased* and the Defendants responded with a promise to be "intentional" about accounting for race in hiring. Comp. ¶¶ 28, 35. Thus Kascsak, who due to being white is harmed by these policies, was swimming upstream when he started interviewing at Expedia in April 2023 to be Head of Global Talent Sourcing, a senior-level

1

role based in Austin, Texas. Comp. ¶¶ 18, 37-38; *cf. Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 143 S. Ct. 2141, 2154 (2023). Nevertheless, he impressed in his remote interviews from Texas—including one with Davis Velasco—and in May 2023 Expedia gave Kascsak a verbal offer and told him that he was the Company's "top pick." Comp. ¶¶ 18, 40, 42-46, 49. But after months of duplicitous delay, Comp. ¶¶ 47-56, Davis Velasco determined he wanted a "diverse" candidate instead, which caused the Defendants to withdraw Kascsak's offer and choose a black woman for role. Comp. ¶¶ 61-66.

In response, Kascsak initiated this litigation, which alleged that Expedia discriminated against him in employment based on sex or race under Title VII and Texas's equivalent statute, and that both Defendants discriminated against him in contracting based on race under § 1981. The Defendants then filed a motion to dismiss Kascsak's action, arguing that this Court lacks personal jurisdiction over Davis Velasco and that Kascsak failed to plausibly allege that race was a "but-for" cause of his failure to earn employment at Expedia. Defendants' Motion to Dismiss ("MTD"), Dkt.12. For the following reasons and as this Opposition Brief ("Response") explains in detail, the motion should be DENIED.

*First*, this Court has personal jurisdiction over Davis Velasco under two distinct tests, the "generalized" rule for specific jurisdiction laid out in *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017 (2021), and the "intentional" rule for specific jurisdiction explained in *Walden v. Fiore*, 571 U.S. 277 (2014). Kascak's jurisdictional facts show that Davis Velasco "deliberately reached" into Texas through his involvement with Kascsak's hiring, his trips to Texas to promote discriminatory workplace practices, and the implementation of his corporate diversity policies in Expedia's Austin office and its hiring processes. *Ford Motor Co.*, 141 S. Ct. at 1025. Because these examples of "reach" enabled or directly involved the discriminatory behavior at

issue in this case, Kascsak's § 1981 "claim[] … arise[s] out of" Davis Velasco's contacts in Texas, satisfying *Ford Motor Co.* jurisdiction. *Id.* Separately, Texas has jurisdiction over Davis Velasco under the *Walden* rule because he "traveled to, conducted activities within, [and] contacted" people in Texas that made this intentional tort litigation foreseeable. 571 U.S. at 288-89.

Further, the fiduciary shield doctrine does not preclude Davis Velasco from § 1981 liability. Because Davis Velasco was a "supervisor[] who exercise[d] control over [Expedia's] employment decisions" and was "personally involved in the complained-of conduct" against Kascsak "[d]istrict courts within the Fifth Circuit … recognize individual liability under § 1981." *Thomas v. Link Staffing*, No. 4:17-CV-3902, ECF No. 36 at 6 (S.D. Tex. Jan. 8, 2019). He also had both personal and pecuniary reasons for discriminating against Kascsak. *Lewis v. Fresne*, 252 F.3d 352, 359 n.6 (5th Cir. 2001). Third, the shield doesn't apply because hiring is a discretionary function over which Davis Velasco had control. *Darovec Mktg. Grp., Inc. v. Bio–Genics, Inc.*, 42 F.Supp.2d 810, 819 (N.D. Ill. 1999). And finally, Defendants' caselaw arguing otherwise, MTD at 7, expressly concedes that "the fiduciary shield doctrine does not apply to intentional torts" if a plaintiff can demonstrate personal jurisdiction, which Kascsak does. *Paul Eyewear, Inc. v. Live Eyewear, Inc.*, No. A-12-CA-908-SS, 2013 WL 12090073, at *6 (W.D. Tex. Aug. 5, 2013).

*Separately*, Defendants' 12(b)(6) motion is wrong: Kascsak pleads a plausible § 1981 claim because his complaint demonstrates race was a "but-for" cause of Defendants' actions. At this stage, Kascsak easily alleges that the Defendants plausibly "would have responded differently"— i.e., honored their job offer—if he belonged to one of the racial categories they consider "diverse." *Comcast*, 140 S. Ct. at 1015. Moreover, a complaint "need not plead that" race "was the *sole* cause of injury to survive" a motion to dismiss, so he is free to argue both race and sex discrimination against Defendants, since that is how they define diversity. *Leal v. McHugh*, 731 F.3d 405, 414-

15 (5th Cir. 2013). If Defendants' sole-cause rationale was correct, then § 1981 causation would contradict inconsistent pleadings as permitted under Rule 8 and allow defendants to "escape liability under § 1981 by discriminating based on two protected characteristics instead of just one." *Peaster v. McDonald's Corp.*, No. 1:22-cv-07037, ECF No. 46, 10 (N.D. Ill. Aug. 22, 2023). Finally, the pertinent statement in Kascsak's declaration which Defendants rely on to argue against but-for cause is in-the-moment speculation and a legal conclusion—and thus not a factual allegation relevant to adjudicating the motion.

For the foregoing reasons, Defendants' motion should be DENIED.

## ARGUMENT

**A.  This Court has specific personal jurisdiction over Davis Velasco for the § 1981 claim.**

When analyzing personal jurisdiction, federal courts "must construe all disputed facts in the plaintiff's favor." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). And while Kascsak bears the burden to establish that Texas has personal jurisdiction over Davis Velasco, he must "make out only a *prima facie* case supporting such jurisdiction." *See Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000) (emphasis added). He does so here, and this Court has jurisdiction over Davis Velasco.

### i.  Kascsak makes a *prima facie* case of specific personal jurisdiction.

As a threshold matter, Defendants incorrectly claim that Kascsak presents this Court with only "a single alleged jurisdictional fact against Velasco." MTD at 5. Nonsense. In his complaint and exhibits attached to this Response,[1] Kascsak presents many jurisdictional facts establishing it is

---

[1] Kascsak may present new facts in this Response to prove personal jurisdiction since a "complaint need not include facts alleging personal jurisdiction." *Gen. Elec. Cap. Corp. v. Posey*, No. 4:02-CV-319-Y, 11 (N.D. Tex. Mar. 20, 2006) (citing *Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712 (7th Cir. 1998)); *see also Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).

fair to sue Davis Velasco in Texas. For example, Davis Velasco interviewed Kascsak over Zoom while Kascsak was at home in Texas. Comp. ¶¶ 18, 39-40. Davis Velasco also had final say on Kascsak's candidacy for a role based in Texas. Comp. ¶¶ 18, 60-63. He gave the order to withdraw Kascsak's job offer, which was made in the State of Texas. Comp. ¶¶ 18, 43, 61-62. And the effects of that decision were felt in Texas when an Expedia employee, Lisa Christensen, acted as an intermediary and communicated to Kascsak he was no longer being considered for the job due to Davis Velasco's decision. Comp. ¶¶ 18, 61-62, 65. Further, Davis Velasco cancelled, through Kristin Stencil, a discussion with Kascsak regarding his hiring status which Kascsak was scheduled to participate in from Texas. Comp. ¶¶ 18, 56, 64.

But even outside of his direct involvement with Kascsak, Davis Velasco regularly travels to Texas and advocates for race-conscious approaches to hiring, promotion, and career advancement while there. [2,3] For example, Davis Velasco visited Texas in fall 2023 to participate in Expedia's Latina Leadership Summit focused on "on how to increase Latina representation in the tech industry." *See* Ex. A at 2, 4 (advertising the Austin-based event); Ex. B (confirming Davis Velasco's attendance). He hosted a "Latinx & Well-Traveled Networking Event" for Expedia employees in Austin in 2023, too. Ex. A at 8. He also attended "Afrotech23" and "Afrotech22" in Austin in 2023 and 2022, respectively, where he led a cohort of Expedia employees and promoted

---

[2] The Texas travel introduced in this Response occurred before Kascsak filed his original complaint, so it is relevant to this Court's personal jurisdiction over Davis Velasco. *See Icon Bldg. Sys., LLC v. Premier Steel Bldgs., Inc.*, No. W-08-CA-157, 2008 WL 11334518, at *3 (W.D. Tex. Sept. 30, 2008) ("The relevant time for determining jurisdiction is the filing of the complaint, and personal jurisdiction thus depends on a defendant's contacts with the forum at the time the lawsuit was filed."); *DGG Grp. v. Lockhart Fine Foods, LLC*, No. 1:20-CV-00330-RP, 8 (W.D. Tex. Jan. 29, 2021).

[3] This is Davis Velasco's recent Texas travel that is discoverable in the public domain. On information and belief, Kascsak asserts more extensive travel to Texas would be revealed in limited discovery, although this is unnecessary if the Court is convinced by this Response.

the Company's race-conscious hiring approach. *See* Ex. C (confirming Davis Velasco's 2023 attendance); Ex. D (2022); Ex. F (confirming Afrotech's Texas locations).

Finally, the policies that Davis Velasco promulgates as Expedia's Chief People, Diversity, and Inclusion Officer are implemented in Expedia's Austin, Texas office and govern recruiting/hiring interactions for that location. Comp. ¶¶ 25, 35; *see generally* Dkt.8-6. Because Expedia, Inc. has offices in limited locations, Davis Velasco's corporate diversity policies are directed primarily at the States it has offices. *See*, *e.g.*, Ex. F. With these facts, Texas has specific personal jurisdiction over Davis Velasco under two distinct legal theories blessed by the Supreme Court.

*First*, Texas has specific personal jurisdiction over Davis Velasco based on the generic test laid out by *Ford Motor Co.*, 141 S. Ct. at 1025. The *Ford Motor Co.* test requires first showing that Davis Velasco "deliberately reached out beyond [his] home" into Texas. *Id.* Then, because Davis Velasco is not "at home" in Texas, Kascsak must show that his "claims … arise out of or relate to [Davis Velasco's] contacts" with Texas. *Id.* (cleaned up). Kascsak does both.

Kascsak provides multiple jurisdictional facts demonstrating Davis Velasco deliberately reached into Texas. *Id.* First, the diversity and hiring policies that Davis Velasco promulgates are implemented specifically in Texas by Expedia's Austin office. *Cf. MCA Records, Inc. v. Highland Music, Inc.*, 844 F. Supp. 1201, 1204 (M.D. Tenn. 1993) (finding jurisdiction over a corporate officer who never visited Tennessee because he "purposefully directed his commercial activities" there and "the legal dispute" was "direct result" of them); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) (making the same point). Second, Davis Velasco travels into Texas as part of his job and to promote such discriminatory workplace policies, of which Kascsak was ultimately the victim. *See D'Addario v. Geller*, 264 F. Supp. 2d 367, 383, 385-86 (E.D. Va. 2003) (finding multiple corporate officers availed themselves of Virginia due to their business

directives and minor travel to the State). And third, Davis Velasco refused to "enter," because of Kascsak's race, into "a contractual [employment] relationship centered" in Texas that was initiated, evaluated, negotiated, and offered in the State and would have required performance there. *Ford Motor Co.*, 141 S. Ct. at 1025.

Kascsak's § 1981 claim "arises out of" Davis Velasco's contacts with Texas for three separate reasons. First, like in *Anderson v. Dominion Fin. Servs., LLC*, if Davis Velasco's race-conscious hiring policies did not apply to Expedia's Texas office, then Kascsak would be employed at Expedia today. 2023 U.S. Dist. LEXIS 156665, *11 (E.D. Tex. 2023) (using a "causal but-for relationship" to satisfy the "claims arise" prong). Second, Davis Velasco's hiring policies committed the Company to discriminate in hiring, including for jobs at Expedia's Austin, Texas office, and a lawsuit on these grounds in Texas was inevitable. *Ford Motor Co.*, 141 S. Ct. at 1026 (noting a "strict causal relationship between the defendant's in-state activity and the litigation" is not required). Finally, Davis Velasco satisfies this *Ford Motor Co.* prong under *Elzeftawy v. Pernix Grp., Inc.*'s logic, which held a defendant "could expect to be hauled" into California courts when it "purposefully avail[ed] itself of an employee located in California." 2021 U.S. Dist. LEXIS 178566, *24-25 (N.D. Ill. 2021). Analogously, Davis Velasco's direct involvement in Kascsak's interview process—including his initial interview of Kascsak in Texas, his order to withdraw Kascsak's Texas-delivered offer for a job in Texas, and his communication of (1) the ultimate hiring decision through Christensen and (2) the cancellation through Stencil of the rescheduled Zoom call to discuss the role—only serves to further substantiate that Defendant had "fair warning" of a lawsuit in Texas. *Ford Motor Co.*, 141 S. Ct. at 1025; *see also Slyce Acquisition Inc. v. Syte-Visual Conception Ltd.*, 422 F. Supp. 3d 1191, 1201 (W.D. Tex. 2019) (defendants do not avoid personal jurisdiction by relying on intermediaries).

*Second*, Texas has personal jurisdiction over Davis Velasco under the intentional tort standard laid out in *Walden*, 571 U.S. 277, and implemented in *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485 (5th Cir. 2018).[4] *Walden* holds that jurisdiction over "an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." 571 U.S. at 286. In *Walden*, the Nevada-based plaintiffs alleged a Georgia law enforcement official intentionally deprived them of their cash during an interaction in Georgia but tried to sue in Nevada, citing the delayed return of their money to their home State. *Id.* at 279-80. The Court held Nevada lacked personal jurisdiction over the Georgia defendant because he "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." *Id.* at 288-89. In contrast, in *Trois* the Fifth Circuit recognized personal jurisdiction over an Ohio-residing defendant in Texas based on his intentional misrepresentation over three phone calls to a business counterparty based in Texas. 882 F.3d at 487-88. Like Davis Velasco, that defendant was being sued personally over his tortious actions while acting as a high-level officer of the defendant-corporation. *Id.*; *see also id.* at 491 (endorsing *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332, 334 (5th Cir. 1982), and noting that "one defamatory phone call initiated by [the] defendant" was sufficient to establish personal jurisdiction.).

Using the intentional tort guidance from both *Walden* and *Trois*, Texas has jurisdiction over Davis Velasco for Kascsak's § 1981 claim. Like in *Trois*, Davis Velasco "knew [Kascsak] lived in Texas" when he refused to contract with him based on race. 882 F.3d at 488. Davis Velasco also reached into Texas to (1) conduct an interview with Kascsak and (2) through an Expedia intermediary, Lisa Christensen, deliver the news that Kascsak would not be getting the relevant job. *Walden*, 571 U.S. at 288; *see also Slyce Acquisition*, 422 F. Supp. 3d at 1201 (W.D. Tex.

---

[4] 42 U.S.C. § 1981 is an intentional tort. Comp. at ¶ 10.

2019). Davis Velasco "traveled to" Texas to promote a race-conscious hiring agenda and "conducted activities" in Texas by "sen[ding]" out corporate diversity hiring policies that were implemented both within Expedia's corporate office and to job candidates for that office like Kascsak. *Walden*, 571 U.S. at 288. Just like in *Trois*, "it is that intentional conduct on the part of [Davis Velasco] that led to this litigation." 882 F.3d at 491. Accordingly, this Court has personal jurisdiction over Davis Velasco under the *Walden*/*Trois* intentional tort reasoning, too.

### ii.  The fiduciary shield doctrine does not preclude this Court from jurisdiction over Davis Velasco.

A State can have personal jurisdiction over certain corporate employees for acts done on behalf of the corporation. *See*, *e.g.*, *Trois*, 882 F.3d at 487-88; *Link Staffing*, No. 4:17-CV-3902, ECF No. 36 at 6. However, the Defendants assert that the fiduciary shield doctrine precludes this Court from jurisdiction to hear Kascsak's § 1981 claim against Davis Velasco. MTD at 8 (citing *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985)). But for the following reasons, the shield does not save Davis Velasco from liability.

*First*, "[d]istrict courts within the Fifth Circuit generally . . . recognize individual liability under § 1981 for supervisors who exercise control over employment decisions and were personally involved in the complained-of conduct," like Davis Velasco. *Link Staffing*, No. 4:17-CV-3902, ECF No. 36 at 6; *see also Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 337 (5th Cir. 2003). Said differently, the defendants are liable if "they are essentially the same as the [employer] for the purposes of the complained-of conduct." *Medina v. Houston Intern. Ins. Group, Ltd.*, No. 4:13-CV-3343, 2015 U.S. Dist. LEXIS 12302, at *4 (S.D. Tex. Feb. 2, 2015). Like in *Medina*, where the individual defendant-officer had hiring authority and told the job recruiter that he had "previously seen white and Hispanic" people in the role denied to the black plaintiff, Davis Velasco had hiring authority over Kascsak, interviewed him, and denied him the job because his skin color

made him a non-diverse candidate. *Id.* at \*12; Comp. ¶¶ 40, 61-64. He is liable under *Link Staffing* and *Medina* alone.

*Separately*, the fiduciary shield does not apply when an individual defendant's "personal interests motivate" the complained-of conduct. *Lewis*, 252 F.3d at 359 n.6 (quoting *Darovec Mktg.*, 42 F.Supp.2d at 819). Davis Velasco went on record saying there are "moral reasons to focus on diversity" and discriminate in hiring. Comp. ¶ 13. Moral reasons are inherently personal, and the Defendants completely ignore this dispositive evidence in their analysis. MTD at 8-11. Further, the Defendants argue that "courts in the Fifth Circuit require much more, such as a tangible financial or other personal benefit for an executive's personal interest, to defeat the fiduciary shield doctrine." MTD at 10. What they mean by "much more" goes unexplained and unattributed. And while they provide a single district court case which disposes of the shield because of pecuniary motivations, that case did not discuss or dismiss non-financial motivations. MTD at 10 (citing *Greathouse v. Cap. Plus Fin. LLC*, 2023 U.S. Dist. LEXIS 157195, \*16).

However, actual Fifth Circuit authority on the fiduciary shield—*Lewis v. Fresne*, 252 F.3d at 359 n.6—approvingly cites to *Darovec Mktg.* which expressly rejects Defendants' argument. "The personal interests need not be pecuniary"; in fact, they may be as simple as "dislike or malice towards the plaintiff." *Darovec Mktg.*, 42 F.Supp.2d at 819. Thus, Davis Velasco's "moral" reasons for discrimination are enough to break the shield. To be sure, Kascsak also provides a financial motivation for Davis Velasco's actions: Specifically, that "employees at Expedia— including those involved in Kascsak's hiring decision" like Davis Velasco "have compensation packages which reward them financially for hiring more diverse employees." Comp. ¶ 36.

Further, the *Darovec Mktg.* case cited approvingly in *Lewis* independently holds that the fiduciary shield does not apply when "the individual's actions are discretionary." 42 F.Supp.2d at

819. Final authority on a hiring decision is fundamentally discretionary. And the relevant discretion belonged to Davis Velasco, who clearly "exercise[d] [enough] control" over Kascsak's hiring decision and decided himself not to hire Kascsak. *Id.*; Comp. ¶¶ 40, 60-63. Due to Davis Velasco's discretion, the fiduciary shield also does not apply.

*Finally*, a well-plead intentional tort against an officer-individual *does* pierce the fiduciary shield if that defendant is sued in a State with jurisdiction over him—Defendants' cited caselaw concedes this. MTD at 10. Defendants cite *Jonathan Paul Eyewear*, 2013 WL 12090073, at *3, to argue that the Fifth Circuit "firmly rejected the notion that the fiduciary shield doctrine does not apply to intentional torts." MTD at 10. But *Jonathan Paul Eyewear* states that an "exception to the [fiduciary shield] exists for intentional torts." 2013 U.S. Dist. LEXIS 194765, *6. Defendants misread *Jonathan Paul Eyewear*, which blurred the fiduciary shield with personal jurisdiction and dismissed because the plaintiffs did not demonstrate "minimum contacts" and "purposeful[] avail[ment]." *Id.* at *6-7; MTD at 10. Defendants' reliance on *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 870 (5th Cir. 2001), is similarly inapplicable. If a plaintiff demonstrates personal jurisdiction over an individual defendant acting in his corporate capacity for an intentional tort claim, then the fiduciary shield does not apply. *Jonathan Paul Eyewear*, 2013 U.S. Dist. LEXIS 194765, *6 (citing *Stuart*, 772 F.2d at 1197). Because Kascsak demonstrates Texas has personal jurisdiction over Davis Velasco for his § 1981 claim, *supra* A.I, the intentional tort exception applies. *Id.*

**B.  Kascsak plausibly alleges race as a but-for cause in his § 1981 claim.**

In the Fifth Circuit, a "motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quotations omitted). And in

reviewing a motion to dismiss, the courts "liberally construe the complaint in favor of the plaintiff." *Diaz v. Central Plains Reg'l Hosp.*, 802 F.2d 141, 145 (5th Cir. 1986).

Here, Defendants' 12(b)(6) motion centers on a singular prong in § 1981's pleading requirements, that Kascsak "fails to plausibly allege that his race was the but-for cause of the failure to hire him." MTD at 11. Specifically, Defendants point to sworn statements in Kascsak's declaration, submitted with his complaint, that allege "[e]ither my race, my gender, or my age (or perhaps all three) was [ ] weaponized against me" and "my race, age and sex worked against me" as evidence race was not a but-for cause of Defendants' discrimination. MTD at 12 (citing Dkt.8-1 ¶¶ 49-50). But Defendants' 12(b)(6) motion fails to account for *Comcast*'s express standard for pleading but-for causation, which Kascsak satisfies. Further, the motion erroneously equates but-for cause with sole cause, which *Leal* rejects. And while the Supreme Court's *Comcast* decision elucidating but-for cause came after *Leal*, the Fifth Circuit's existing causation jurisprudence was unaffected by *Comcast*. Finally, the motion confuses longstanding pleadings law and it misrepresents Kascsak's relevant declaration statement. For any of these reasons, the motion should be denied.

*First*, Defendants' argument that Kascsak fails to demonstrate race as a "but-for cause of Expedia's decision not to hire him" invokes *Comcast* but then ignores its express test for analyzing this requirement—which Kascsak meets. MTD at 12. As *Comcast* explained, the relevant inquiry asks "what would have happened if [Kascsak] had been [not] white." 140 S. Ct. at 1015; *see also McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 286-87 (1976) (white Americans get the same rights as anyone else under § 1981). "If the defendant [plausibly] would have responded differently but for the plaintiff's race, it follows that the plaintiff" adequately pleads causation. *Comcast*, 140 S. Ct. at 1015; *Iqbal*, 556 U.S. at 678.

Kascsak's complaint satisfies the *Comcast* causation test: He was offered the pertinent job and told by Allen that he was the Company's "top pick" for the role but then Davis Velasco decided not to hire him and look elsewhere because he wasn't diverse. Comp. ¶¶ 49, 62-63. And as Expedia's 2022 Diversity Report makes clear, race is a primary attribute for how the Defendants categorize diversity and whites as a class are excluded from being racially diverse. *See* Comp. ¶¶ 24-29; *see* Dkt.8-6 at 8-9. At this stage, these facts alone satisfy causation. *See Daniels v. Univ. of Tex. MD Anderson Cancer Ctr.*, No. H-16-2473, 6 (S.D. Tex. Feb. 26, 2019) (holding plaintiff's mere allegation that "she was terminated by Phillips and that Phillips treated her more harshly than [similar] non-Black [] individuals … is enough to state a plausible claim" under § 1981).

But Kascsak presents more: The 2022 Diversity Report, which is attributed to Davis Velasco, suggests the Company precluded whites from 25% of the Company's job slots while Kascsak was interviewing. Comp. ¶¶ 25-27. The Report also admits that racial hiring in senior leadership positions like the role Kascsak applied for is the *one* area of its diversity hiring program where Expedia fell short of its diversity goals from 2021-22. Comp. ¶¶ 29. Because of this, the Defendants promised to be "intentional" about accounting for race in hiring and ultimately elevated an internal black employee into the pertinent role. Comp. ¶¶ 28, 66, 79. These allegations further substantiate that if Kascsak had the same resume and interview success but belonged to a racial group which Defendants consider "diverse," then he'd be employed at Expedia right now. With these facts Kascsak further shows that Defendants "responded differently" to his employment based on race and thus he satisfies but-for causation under *Comcast*.

*Second*, Defendants' entire argument hinges on the erroneous assumption that but-for causation requires that race be the *sole* cause of an adverse employment action. MTD at 12-13. For example, they cite Kascsak's declaration statement where he observes "[e]ither my race, my

gender, or my age … was [ ] weaponized against me" as evidence that "race was *not* the but for cause of Expedia's hiring decision." MTD at 12 (cleaned up). But this false equivalency is fatal to their motion. In *Leal*, 731 F.3d 405, the Fifth Circuit held that "but-for cause does not mean sole cause" and then rejected a motion to dismiss an Age Discrimination in Employment Act ("ADEA") claim because the plaintiffs attributed their termination to "both age discrimination and a personal relationship." *Id.* at 414-15; *see also EEOC v. DynMcDermott Petroleum Operations, Co.*, 537 Fed. Appx. 437 (5th Cir. July 26, 2013) (per curiam) (unpublished) (rejecting the same argument after age and disability discrimination were alleged). Similarly, Kascsak "need not plead that" race "was the *sole* cause of [his] injury to survive" Defendants' motion to dismiss. *Leal*, 731 F.3d at 415, since but-for causation under the ADEA is the same standard as § 1981. *See Tam Hoang v. Microsemi Corp.*, 2023 U.S. App. LEXIS 5223, *10 (5th Cir. 2023) (per curiam). Instead, "other factors" can "contribute[] to [an employer's] taking the adverse action, as long as" race "was the factor that made a difference"—and this critical inquiry is a question for discovery and trial, not pleadings. *Leal*, 731 F.3d at 415 (endorsing *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273 (10th Cir. 2010)).

*Leal* remains good law and is consistent with the Supreme Court's subsequent *Comcast* decision. In that pivotal § 1981 case, the Court settled a circuit split by rejecting the Ninth Circuit's anomalous causation test, which allowed plaintiffs to prevail by demonstrating race played only "some" or "any" role in the denial of contract. 140 S. Ct. at 1013. In doing so, the Court adopted the same but-for causation standard for § 1981 as in *Leal*. It held that race needs to be "*a*," but not *the*, but-for cause to win—endorsing a more stringent standard than Title VII's "motivating factor" test but implicitly permitting the pleading of multiple but-for causes. *Id.* at 1014; *see also Bostock v. Clayton County*, 140 S. Ct. 1731, 1739 (2020) ("Often, events have multiple but-for causes.").

*Comcast* did not abrogate, overrule, or in any way affect *Leal*'s causation jurisprudence. Today *Leal* still permits plaintiffs to plead multiple causes for adverse actions without defeating but-for causation, and thus the crux of Defendants' argument for dismissal is wrong. *See Coleman v. Kijakazi*, 2023 U.S. App. LEXIS 7361 (5th Cir. 2023) (using *Leal* to analyze but-for causation in a Title VII *retaliation* claim).

*Third*, Defendants' motion misrepresents Kascsak's complaint, which never actually pleads multiple but-for causes under his § 1981 claim. Comp. ¶¶ 95-108. As Rule 8(d)(3) makes clear, a "party may state as many separate claims [] as it has, regardless of consistency." F.R.C.P. 8; *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 674 (5th Cir. 2003). This rule reflects the lack of evidentiary certainty for plaintiffs at the pleading stage. And this rule makes sense: Requiring plaintiffs to commit this early to one set of initial, consistent allegations would preclude honest case development and ultimately stubborn true justice. In his § 1981 claim, Kascsak never asserts that race and sex together motivated Defendants' adverse actions (although *Leal*/*Comcast* would allow him to do so anyway at the 12(b)(6) stage). Instead, he makes independent, separate claims under each theory. The reason that "Kascsak relies on" many of "the very same allegations to support both" his race and sex claims, MTD at 13 n.12, is because Allen's admission that Kascsak's lack of diversity costed him the job is ambiguous. At Expedia, hires can be diverse based on race, sex, or both, Comp. ¶¶ 24-29; *see generally* Dkt.8-6, so it is a material issue of fact appropriate for sorting out in discovery as to how, if at all, each immutable characteristic affected Defendants' relevant actions.

Defendants' cited cases do not support dismissal. In *Hopkins v. Wayside Schs.*, the plaintiff alleged "[his whistleblowing] reports … were a contributing factor in his termination" and that he "was denied equal rights [] under [] § 1981 because of his race" *within the same cause of action*.

No. 1:21-CV-0334-RP, ECF No. 1 ¶¶ 57-58 (W.D. Tex. Aug. 11, 2023) (notice of appeal filed). So the plaintiff in *Hopkins* did not utilize independent, potentially inconsistent claims as Rule 8(d)(3) allows. Further, in *Hopkins* the plaintiff's primary factual allegation to substantiate his § 1981 claim was that he was the "only" black employee at work, *id.*, ECF No. 1 ¶¶ 46, 48, and thus the court found the plaintiff failed to "plausibly allege[] that" the defendant "discriminated against him because of his race." *Hopkins*, No. 1:21-CV-0334-RP at 10. Moreover, the whistleblowing retaliation allegation in the complaint was the only plausibly alleged claim. *See generally id.* at ECF No. 1. As a result, the *Hopkins* court was able to conclude—without any substantial legal analysis—that race was not a well-plead but-for cause of the termination. *Hopkins*, No. 1:21-CV-0334-RP at 10. In contrast, Kascsak satisfies the *Comcast* causation standard. *Supra*. Further, Kascsak does not allege sex and race discrimination within the same cause of action in the pleading; he makes independent claims. Finally, and likely due to insufficiencies with the plaintiffs' complaint, *Hopkins* fails to account for *Leal*'s express holding that plaintiffs "need not plead that" race "was the *sole* cause of" an adverse action to survive a motion to dismiss. 731 F.3d at 415. *Hopkins* is an aberration based on the plaintiff's poor pleadings, not persuasive or applicable legal analysis for this Court.

Defendants' other cases, which are all out-of-circuit, suffer from similar pleading flaws and/or are inconsistent with *Leal*/*Comcast*'s language allowing the pleading of multiple but-for causes. Instead, the pertinent case for this Court beyond *Leal*/*Comcast* is *Peaster*, No. 1:22-cv-07037, ECF No. 46. In *Peaster*, the court considered whether the plaintiff "pleads himself out of court because [his] identification of multiple possible motives for the alleged adverse treatment precludes arguing that race was the determining factor" under § 1981. *Id.* at 8 (quotations omitted). This was an issue of first impression in the Seventh Circuit. *Id. Peaster* held that pleading multiple theories

is allowed, observing that "*Comcast* does not rule out such pleading" and that but-for causation is "not necessarily inconsistent with pleading that an adverse employment action had two but-for causes" or "that either of two factors was the only but-for cause." *Id.* In addition, *Peaster* recognized the absurd policy result Defendants' motion implies and *Comcast/Leal* avoid, which is that "a defendant [could] escape liability under § 1981 by discriminating based on two protected characteristics instead of just one." *Id.* at 10. For example, under Defendants' logic, a future Texan who is told by a company CEO in writing that he was denied a job because of "either your race or your sex, but I'm not telling you which" would be forced to gamble at the pleading stage as to whether to bring a § 1981 claim and abandon his sex discrimination remedies altogether, or to bring both the sex and race claims under Title VII and eschew § 1981. This would be "odd," to say the least. *Id.* at 10.

*Finally*, the Defendants' motion is premised on a distortion of Kascsak's declaration—with full context it is clear his pertinent statement is consistent with race as a but-for cause of Defendants' actions. When Kascsak remarked "my race, age and sex worked against me," that portion of the declaration was addressing Kascsak's reaction immediately after being told that the Defendants prolonged his hiring because he was not diverse. *See* Dkt.8-1 ¶¶ 40-55. In the specific paragraph, Kascsak says:

> On top of that, my vast experience in talent acquisition and HR at major technology firms made [Allen's] comment about Davis Velasco's hesitation's even clearer. I know from experience that companies like Expedia discriminate to meet diversity targets behind closed doors, and now I was a victim of this scheme. *Based on what Allen said and my own knowledge of technology recruitment practices*, my race, age, and sex worked against me due to Expedia and Davis Velasco's interest in a diverse candidate.

Dkt.8-1 ¶ 50 (emphasis added).[5] This is not a factual allegation; if it were, age discrimination would have been included in Kascsak's complaint, too. It is mere speculation, in the moment of time this specific paragraph addresses, based only on what Allen told him and his own experiences as a talent executive at comparable enterprises. At the time Kascsak thought this, he did not know about other pieces of evidence that substantiate his § 1981 claim, like Defendants' unique failure to meet their 2021-22 race-specific hiring goals for senior positions and their promise to be "intentional" about race. There is no contradiction between the pertinent statements in the declaration and the complaint, since these documents serve distinct purposes, and reflect different time periods, levels of knowledge, and relevance to Defendants' motion. Kascsak's complaint is what reflects his theories of the case. Even so, if Kascsak had expressly said in his pleading that "race, age, and sex" all motivated Defendants' actions in his actual § 1981 claim, he still plausibly alleges causation under the *Comcast* test and *Leal* still permits such an assertion during pleadings.[6]

---

[5] The pertinent declaration statement relied upon by Defendants is also a legal conclusion which should be "ignore[d]" by the Court for the purposes of ruling on a 12(b)(6) motion. *Ghedi v. Mayorkas*, 16 F.4th 456, 463 (5th Cir. 2021).

[6] Kascsak reads Fifth Circuit caselaw as encouraging a plaintiff to give this Court early notice as to any amendments he would make in the event Defendants' motion is granted in whole or in part. *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016). Thus, out of an abundance of caution, Kascsak attaches as Ex. G a conditional motion for leave to amend his complaint for this contingency. However, the Court should not view the attached motion as anything more than due and considerate preparation—the law and facts both support denial of Defendants' motion.

**CONCLUSION**

The State of Texas has jurisdiction over Davis Velasco and the fiduciary shield doctrine does not protect him from liability under § 1981. Separately, Kascsak plausibly pleads that race was a but-for cause of the Defendant's adverse employment action. Accordingly, Defendants' motion to dismiss should be DENIED.

Respectfully submitted on this TWENTY-NINTH of JANUARY, 2024,

//s Max Schreiber_____

Ashley Courtney Esq.
Barred in the Western District of Texas
Liebmann & Liebmann, P.A.
714 N. Spring St.
Pensacola, FL 32501
FL #1030747
ashleycourtney@protonmail.com
850-781-2109

Alexander Liebmann, Esq.*
*bar admission pending and pro hac vice
Liebmann & Liebmann, P.A.
714 N. Spring St.
Pensacola, FL 32501
FL #1032726
alex@liebmannlaw.net
845-270-3843

Max Schreiber, Esq.*
*pro hac vice
Of Counsel
Liebmann & Liebmann, P.A.
714 N. Spring St.
Pensacola, FL 32501
IN #37357-45
maxschreiber145@gmail.com
401-408-9370

**PROOF OF SERVICE**

I hereby certify that on January 29, 2024, I electronically filed the foregoing with the Clerk of the United States District Court for the Western District of Texas using the CM/ECF system. Because defense counsel has not yet appeared in this case, I have served this declaration on them via email with their permission.

_/s/Max Schreiber_
Max A. Schreiber
Counsel of Record