**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **Michael Kascsak**, | § § § | |
| Plaintiff, | § § | |
| v. | § § | No. 1:23-cv-1373-DII |
| **Expedia, Inc.**, and **Michael Davis Velasco**, | § § § § | |
| Defendants. | § § | |

**DEFENDANTS' REPLY IN SUPPORT OF (1) MOTION TO DISMISS CLAIMS AGAINST DEFENDANT MICHAEL DAVIS VELASCO FOR LACK OF PERSONAL JURISDICTION AND, (2) MOTION TO DISMISS PLAINTIFF'S 42 <u>U.S.C. § 1981 CLAIM FOR FAILURE TO STATE A CLAIM</u>**

## I. INTRODUCTION

Kascsak bears the burden to establish personal jurisdiction over Velasco, and it is a burden he has not met and cannot meet both factually and legally. In his Complaint, Kascsak states "Velasco's relevant conduct for specific jurisdiction here is his directive to look for a more diverse candidate and not hire Kascsak, a white and male Texas resident." Compl. (Dkt. 8) at 6. As explained in Defendants' Motion, under the Supreme Court's current law on personal jurisdiction, Kascsak's alleged jurisdictional facts are insufficient to create specific jurisdiction over Velasco because they fail to establish minimum contacts with Texas as opposed to contacts with Kascsak. Alleging that Velasco participated in the decision not to hire Kascsak—from New York—is simply not enough.

In his Response, Kascsak for the first time claims there are "many jurisdictional facts establishing it is fair to sue [] Velasco in Texas" and points to Velasco's attendance at several industry events in Texas as additional alleged contacts. Resp. (Dkt. 13) at 4. But none of these facts are relevant to *specific* jurisdiction (the only type of jurisdiction alleged here) because they have nothing to do with the hiring decision that forms the basis of Kascsak's claims.[1] Velasco's alleged travel to Texas, which is wholly unrelated to Kascsak's hiring decision, simply does not confer specific jurisdiction over Velasco. Kascsak's complaint as against Velasco, therefore, should be dismissed in its entirety.

Kascsak's Section 1981 claim should further be dismissed as to both Velasco and Expedia because he fails to meet the Supreme Court's *Comcast* requirement that he plead that race was the "but-for" cause of the decision not to hire him. Defendants have cited multiple cases

---

[1] In fact, two of the three events Kascsak now points to were held *after* the August 2023 decision to not hire Kascsak. *See* Dkt. 13-1 (referencing a Latina Leadership Summit on October 12, 2023); Dkt. 13-2 and 13-4 (referencing AfroTech 2023, which was held on November 1, 2023).

(including the *Hopkins* case from this district) holding that alleging multiple bases for discrimination beyond just race, as Kascsak has done here, is fatal to a plaintiff's Section 1981 claim. Kascsak's Response fails to cite to any contrary authority interpreting Section 1981, and instead relies on cases interpreting different statutes in different contexts that cannot overturn controlling case law. Kascsak's Section 1981 claim should therefore be dismissed in its entirety.

## II.  ARGUMENTS

### A.  Kascsak fails to establish personal jurisdiction over Velasco.

Kascsak has only ever asserted that this Court has specific (as opposed to general) personal jurisdiction over Velasco. To meet his burden of establishing specific jurisdiction over Velasco, Kascsak must demonstrate minimum contacts between Velasco (not Expedia) and Texas (not Kascsak) giving rise to this employment action. Kascsak fails to do so; he improperly conflates Velasco's contacts with Expedia's, and relies on contacts Velasco may have had with Texas that have nothing to do with Kascsak or the decision not to hire him. The fact remains that Kascsak has not (and cannot) meet his burden of establishing that *Velasco* had sufficient contact *with Texas*, and that this lawsuit *arose out of those contacts*.

### 1. Kascsak has failed to meet his burden of presenting facts sufficient to establish specific personal jurisdiction over Velasco.

As set forth in Defendants' Motion, the facts Kascsak has alleged in his Complaint, namely Velasco's participation in a Zoom interview with Kascsak (from New York) and alleged decisions regarding Kascsak's employment (from New York), are insufficient "minimum contacts" between Velasco and Texas to establish specific personal jurisdiction over him.

Rather than address his underlying failure to meet the "minimum contacts" test, Kascsak insists that he is not required to do so. Relying on outdated case law, Kascsak argues that Velasco is subject to personal jurisdiction in Texas because the "effects" of the employment

3

decision regarding Kascsak "were felt in Texas." Resp. at 4-5. Not so. As discussed at length in Defendant's Motion, this so-called "effects test" has been squarely rejected by both the Supreme Court and the Fifth Circuit. *See* Motion (Dkt. 12) at 6-7. In fact, this Court recently (again) rejected a similar jurisdictional argument. In *Turner v. Harvard MedTech of Nevada, LLC,* the employer allegedly (1) entered into an agreement with a Texas employee, which would have (2) been performed by the employee in Texas, and (3) included benefits governed by the Texas Workforce Commission. 620 F. Supp. 3d 569, 575 (W.D. Tex. 2022). The Court held that the employer should be dismissed for lack of jurisdiction because "Plaintiff's allegations of misconduct by [defendant] occurred while [defendant] was in Nevada" and "the fact that [defendant] communicated with Plaintiff does not create minimum contacts." *Id.* The Court stated unequivocally that "merely contacting or contracting with a resident of a forum state is insufficient to subject a defendant to specific jurisdiction in that state." *Id.*

Next, Kascsak continues to assert, despite binding Fifth Circuit authority holding otherwise,² that jurisdiction is established by merely pleading an intentional tort claim. But the cases on which Kascsak relies for his "intentional tort" theory of jurisdiction are distinguishable from this dispute in a key respect—in those cases, unlike here, the contacts with the forum state were the tortious acts *giving rise to the litigation*.³ The *Trois* case relied upon by Kascsak only further

---

² *See Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.,* 24 F.4th 491, 497 (5th Cir. 2022) (holding that jurisdiction was not established over an out-of-state law firm and two of its members for claims of tortious interference and fraud because "although [Defendants'] allegedly tortious conduct may have *affected* [Plaintiff] in Texas, none of this conduct *occurred* in Texas.").

³ *See* Resp. at 6, The cases cited by Kascsak are all pre-*Walden* and either involve jurisdictional contacts that are tortious themselves and/or rely on "effects" arguments that *Walden* rejected. *See, e.g. D'Addario v. Geller*, 264 F. Supp. 2d 367, 379-80 (E.D. Va. 2003)(finding jurisdiction under Virginia's specific long-arm statute because the "the alleged misrepresentations and false reports" were filed in Virginia); *MCA Records*, 844 F. Supp. 1201, 1204 (M.D. Tenn. 1993)(finding jurisdiction under the Tennessee long-arm statute because the individual was not just a

4

illustrates this point. As Kascsak himself notes, jurisdiction in *Trois* (a fraud case) was based on the defendants' "intentional misrepresentations over the course of three phone calls to a business counterparty based in Texas." Resp. at 8; *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F. 3d 485, 490-91 (5th Cir. 2018). There is no allegation that Velasco's contact with Texas—a Zoom call from New York—was tortious, which means *Trois* provides no support for asserting jurisdiction over Velasco.

It is clear that Kascsak cannot establish that Velasco's actions in this matter create sufficient minimum contacts with Texas, and his reliance on outdated or inapplicable case law cannot avoid that simple fact.

### 2. Kascsak's new allegations regarding Velasco's general contacts with Texas— unrelated to this dispute—do not satisfy the specific jurisdiction standard.

Kascsak did not allege that this Court has general jurisdiction over Velasco—nor could he. Yet in his Response Kascsak attempts to claim that incidental and unrelated work trips that Velasco took to Austin to attend industry conferences support a so-called "'generalized' rule for specific jurisdiction." Resp. at 2, 5. That is simply not the law. There is no such thing as "generalized" specific jurisdiction, and Kascsak provides no authority whatsoever to support his theory.

The law is clear that specific jurisdiction must be "case-linked", i.e., the plaintiff's suit must itself arise out of or relate to the defendant's forum contacts. *Daimler AG v. Bauman*, 571 U.S. 117, 136-139 (2014). Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 895 (5th Cir. 2022) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). None of the new jurisdictional facts

---

"corporate officer" but the actual incorporator of the defendant corporation who therefore was personally "transact[ing] business within the state" per the statute).

introduced in his Response form the basis of his claim against Velasco, which means they are irrelevant to the jurisdictional analysis at hand.

Though Kascsak relies heavily on the Supreme Court's 2021 *Ford Motor* opinion throughout his Response, *Ford Motor* does nothing to help Kascsak's case for jurisdiction over Velasco. *Ford Motor Co. v. Montana Eight Jud. Dist.*, 141 S.Ct 1017 (2021). The *Ford Motor* Court did not hold that unrelated contacts can establish specific jurisdiction; rather it found that Ford's "veritable truckload of contacts" with the forum state, including billboards, TV and radio spots, print ads, and dozens of dealerships,[4] were sufficiently related to the personal injury claims asserted against Ford to establish specific jurisdiction over Ford in the forum state. The facts in this case are nothing like *Ford Motor*. Velasco is not an international multi-billion-dollar conglomerate with a "veritable truckload of contacts" with the state of Texas.[5] And Kascsak's new allegations regarding Velasco's attendance at a couple of Texas trade conferences are wholly unrelated to the Kascsak hiring decision and completely fail to establish the causal relationship that *Ford Motor* requires in a specific jurisdictional analysis.[6]

---

[4] Kascsak also omits a key fact from *Ford Motor*—that the existence of minimum contacts <u>was not disputed in that case</u>. 141 S.Ct. at 1028. Unlike Velasco, Ford Motor "admit[ted] that it has purposely availed itself of the privilege of conducting activities" in the forum state. *Id.* at 1019.

[5] Kascsak also repeatedly relies on cases that do not involve jurisdictional challenges, or involve only a *corporate* client (as in *Ford Motor*) in support of his jurisdictional arguments. *See, e.g. See Elzeftaway v. Pernix Group, Inc.*, No. 1:18-CV-06971, 2021 WL 4264276, at *1 (N.D. Ill. Sept. 20, 2021)(Resp. at 7)(which involved a 12(b)(6) challenge to a claim brought by an Illinois plaintiff against a California employer for alleged violations of the California Fair Employment and Housing Act—and did not address a personal jurisdiction challenge or include any claims against an individual employee) and *Anderson v. Dominion* No. 2:23-CV-00195-JRG, 2023 WL 5723654, at *4 (E.D. Tex. Sept. 5, 2023)(Resp. at 7)(which similarly did not involve a claim against a corporate officer but rather against a corporate entity that employed individuals (including the plaintiff) to serve its customers in Texas).

[6] As explained by the Fifth Circuit in *Johnson v. TheHuffingtonPost.com, Inc.*, "though *Ford Motor* did reject a strict causal theory of relatedness, it did not say that 'anything goes.' Quite the

6

Kascsak's problem is clear. He acknowledges that Velasco's alleged "directive to look for a more diverse candidate"—which Kascsak's Complaint calls "Velasco's relevant conduct for specific jurisdiction"—did not occur in Texas. And there is no causal relationship between Velasco's alleged conduct in Texas— attending industry events on behalf of Expedia—and the employment decision on which this case is based.[7] Accordingly, Kascsak cannot establish jurisdiction over Velasco.

### 3. Kascsak fails to show why this Court should disregard the fiduciary shield doctrine.

To be clear, Kascsak has failed to establish sufficient minimum contacts to satisfy his burden of establishing specific personal jurisdiction over Velasco. That should end the Court's personal jurisdiction analysis. Nonetheless, even if this Court were to find sufficient minimum contacts here, Kascsak would still be unable to establish jurisdiction over Velasco under the fiduciary shield doctrine, which "prevents this Court from assuming personal jurisdiction over [an out-of-state defendant]" when the defendant's "only relevant contacts are in his capacity as a corporate officer." *Sefton v. Jew*, 201 F. Supp. 2d 730, 743 (W.D. Tex. 2001).

Kascsak argues that the doctrine does not apply because Velasco "is liable under *Link Staffing* and *Medina* alone" (Resp. at 9)—yet neither case involved a challenge to personal

---

contrary. For specific jurisdiction, a plaintiff must link the defendant's *suit-related* conduct to the forum. Mere market exploitation will not suffice." 21 F.4th 314, 324 (5th Cir. 2021) (cleaned up).

[7] Attending a conference on or expressing general support for diversity is not a wrongful or tortious act that can be used to impose jurisdiction over Velasco. "It is well established that the presence of an affirmative action plan is not evidence of discrimination against the majority." *Ulrich v. Exxon Co., U.S.A., a Div. of Exxon Corp.*, 824 F. Supp. 677, 685 (S.D. Tex. 1993); *see also Duffy v. Wol-le*, 123 F.3d 1026, 1038-39 (8th Cir. 1997)("An inclusive recruitment effort enables employers to generate the largest pool of qualified applicants and helps to ensure that minorities and women are not discriminatorily excluded from employment… The only harm to white males is that they must compete against a larger pool of qualified applicants. This, of course…does not state a cognizable harm.").

jurisdiction at all, or even mentions the fiduciary shield doctrine.[8] Kascsak conflates personal jurisdiction with personal liability under Section 1981, which is irrelevant to this analysis. Kascsak also continues to claim mere allegations of an intentional tort are enough to rob a litigant of the protection of the fiduciary shield, asserting that "Defendants misread *Jonathan Paul Eyewear*." Resp. at 11. But the Court in *Jonathan Paul Eyewear* could not have been clearer:

> There are **several problems** with Plaintiffs' argument. First, it erroneously equates the foreseeability of an injury in Texas with the existence of minimum contacts. Second, **merely alleging an intentional tort is not sufficient to avoid the fiduciary shield doctrine**.

*Jonathan Paul Eyewear, Inc. v. Live Eyewear, Inc.,* No. A-12-CA-908-SS, 2013 WL 12090073, at *2 (W.D. Tex. Aug. 5, 2013)(emphasis added).[9]

Because the fiduciary shield doctrine removes all of Velasco's alleged actions from the jurisdictional analysis, the Court need not even conduct a minimum contacts test and could dismiss for lack of personal jurisdiction on the grounds of the fiduciary shield doctrine alone.

### B. Kascsak's Failure to Plausibly Allege But-For Causation is Fatal to his Section 1981 Claim.

As the Supreme Court made clear in *Comcast*, a plaintiff asserting a race discrimination claim under 42. U.S.C. § 1981 "must **initially plead** and ultimately prove that, **but for race**, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020) (emphasis added). Kascsak's

---

[8] Both cases involve Rule 12(b)(6) motions to dismiss on the sole issue of whether individual liability could be asserted against the decision-maker under section 1981—and do not include or discuss any personal jurisdiction challenge.

[9] Kascsak also continues to claim that Velasco's support for diversity in the workplace shows a personal bias that is "dispositive" against application of the fiduciary shield doctrine. Resp. at 10. Such claim is not only absurd but unsupported. Kascsak relies on *Greathouse*—which involved significant individual financial benefit, and *Lewis v. Fresne*, which is both distinguishable and no longer good law after *Walden v. Fiore*. *See* Motion at 7-8, 10.

Response does not cure his failure to plausibly allege that his race was the but-for cause of the decision not to hire him.

Kascsak fails to distinguish the Court's recent *Hopkins* decision, which cited *Comcast* in dismissing the plaintiff's Section 1981 claim, finding that because the plaintiff asserted both that his race <u>and</u> his whistleblower activities were the reason for his termination, "he does not claim race was a but-for cause of his injury." *See Hopkins v. Wayside Sch.,* No. 1:21-CV-0334-RP, 2023 WL 5186881, at *6 (W.D. Tex. Aug. 11, 2023)(notice of appeal filed). Nor does Kascsak address the multiple post-*Comcast* cases outside of Texas (cited in Defendants' Motion) dismissing Section 1981 claims for failure to plausibly plead but-for causation because the plaintiff alleged multiple reasons for the alleged discriminatory action. *See* Motion at 12-13.

Kascsak instead relies on cases that either do not involve Section 1981 claims, or do not address the but-for causation standard at all. Kascsak relies heavily on *Leal v. McHugh*, 731 F. 3d 405 (5th Cir. 2013), which involves an ADEA claim (not a Section 1981 claim) and which pre-dated the Supreme Court's 2020 *Comcast* decision by seven years. Resp. at 12. Kascsak goes to great pains to equate the *Leal* ADEA decision to his Section 1981 claim, but the fact remains that *Leal* has never been applied to or even discussed in the Section 1981 causation context in the ten years since the opinion was issued (nor was it cited by this Court in *Hopkins*). The other Fifth Circuit case he cites, *Coleman v. Kijakazi* is a Title VII case that does not discuss but-for causation at all, in which the Court *dismissed* a Title VII claim because the plaintiff "failed to plead the causation element." *See Coleman*, No. 21-10399, 2023 WL 2660167, at *3 (5th Cir. Mar. 28, 2023). And Kascsak improperly relies on a non-Section 1981 Supreme Court case, *Bostock v. Clayton County*, which expressly limited its holding to the narrow Title VII question before it: "whether an employer who fires someone simply for being homosexual or transgender has

9

discharged or otherwise discriminated against that individual 'because of such individual's sex,'" stating that the Court would not "prejudge" any claim "beyond Title VII." 140 S.Ct. 1731, 1753 (2020).[10]

Kascsak cites to only one Section 1981 case to support his attempt to assert multiple "but-for" causes for Expedia's refusal to hire him: *Peaster v. McDonald's Corp*, No. 22 CV 7037, 2023 WL 5387573, at *4 (N.D. Ill. Aug. 22, 2023). But although the court in *Peaster* allowed the plaintiff to plead two alleged reasons for his termination, both claims were asserted under Section 1981 and related to race discrimination: (1) a race discrimination claim and (2) a retaliation claim for complaining of race discrimination. The *Peaster* court expressly distinguished the case from instances in which the plaintiff asserted both race and *non-race* (and non-Section 1981) claims: "Where courts have dismissed § 1981 claims for failing to plead that race was a but-for cause of the alleged discrimination, the plaintiffs have articulated a theory of discrimination based, at least in part, on a characteristic § 1981 does not protect….Here, Peaster's allegations are meaningfully different because both possible bases for his § 1981 claim—his racial identity and statutorily protected activity—are protected under the statute." *Id.*[11]

In contrast, the post-*Comcast* cases cited and discussed in Defendants' Motion (including this Court's recent *Hopkins* decision) make clear that a plaintiff who alleges non-race-based

---

[10] *See also Pelcha v. MW Bancorp, Inc.,* 988 F.3d 318, 324 (6th Cir.), *cert. denied sub nom. Pelcha v. Watch Hill Bank,* 211 L. Ed. 2d 281, 142 S. Ct. 461 (2021)(refusing to apply *Bostock* to ADEA claim, because "the rule in Bostock extends no further than Title VII"); *Arora v. Nav Consulting Inc.*, No. 21 C 4443, 2022 WL 7426211, at *3 (N.D. Ill. Oct. 13, 2022)(same).

[11] Plaintiff also incorrectly claims that *Daniels v. Univ. of Tex. MD Anderson Cancer Ctr.*, supports his assertion that he has satisfied the causation standard. *See* Resp at 13.  The court in *Daniels* did not discuss Section 1981 causation at all and dismissed the Section 1981 claim because "Eleventh Amendment immunity bars Plaintiff's § 1981 race discrimination claims against MD Anderson."  No. CV H-16-2473, 2019 WL 2554126, at *1 (S.D. Tex. Feb. 26, 2019), *report and recommendation adopted*, No. 4:16-CV-2473, 2019 WL 1324364 (S.D. Tex. Mar. 25, 2019).

grounds for recovery does not meet the *Comcast* pleading standard. *See* Motion at 12-13. The fact patterns in those cases are virtually indistinguishable from Kascsak's claims here.

Finally, Kascsak's claim that Rule 8 allows him to plead multiple grounds in the alternative cannot be reconciled with *Comcast's* holding that a plaintiff must "**plead**…*that, but for race* [he] would not have suffered the loss of a legally protected right." *See Comcast*, 140 S. Ct. at 1019 (emphasis added). In fact, the court in *Arora v. Nav Consulting Inc.* rejected the notion that the plaintiff could plead multiple discrimination theories as alternative arguments, noting that "the fact that Arora can bring suit under various civil rights statutes does not change *Comcast's* holding that race must be asserted as the determinative cause to sustain a 1981 claim." No. 21 C 4443, 2022 WL 7426211, at *3 (N.D. Ill. Oct. 13, 2022). Pleading his race and sex claims separately also does not cure this pleadings deficiency. *See, e.g. Adetoro v. King Abdullah Acad.*, 585 F. Supp. 3d 78 (D.D.C. 2020)(rejecting such claim because "the court cannot simply ignore" the other (separately plead) allegations in the complaint). In short, even if Kascsak did plead his sex discrimination claim in the alternative (he did not)[12], the fact remains that Kascsak alleges, at best, that his race, his sex and/or his age may have contributed to the decision, which does not meet the *Comcast* but-for standard. *See id*. ("[I]t is impossible for the Court to find that race was the but-for cause of the Former Employees' termination. Accepting the Former Employees' own allegations as true, it is equally plausible that they were terminated for not being Sunni Muslim, not being from Saudi Arabia, or both…Or some combination of *all* of these reasons.").

Kascsak's allegation that the reason for the decision not to hire him was his race*, his age, his sex*, or all three cannot be squared with his conclusory assertion that race was the but-for cause of Expedia's decision. His claim should therefore be dismissed.

---

[12] Kascsak further has not filed a proposed amendment as required by Local Rule CV-7.

Dated: February 5, 2024.

                    Respectfully submitted,

                    SCOTT DOUGLASS & MCCONNICO LLP
                    303 Colorado Street, Suite 2400
                    Austin, Texas 78701
                    (512) 495-6300 Telephone
                    (512) 495-6399 Facsimile

                    By: /s/ David D. Shank
                        David D. Shank
                        Texas Bar No. 24075056
                        dshank@scottdoug.com
                        Amy Lee Dashiell
                        Texas Bar No. 90001564
                        adashiell@scottdoug.com
                        Robert P. Earle
                        Texas Bar No. 241245566
                        rearle@scottdoug.com

                    *Counsel for Defendants*

4895-9484-7394

**CERTIFICATE OF SERVICE**

      I certify that on February 5, 2024, I served a copy of the foregoing on the parties listed below by CM/ECF.

Ashely Courtney, Esq.
Alexander Liebmann, Esq.
Max Schreiber
LIEBMANN & LIEBMANN, P.A.
714 N. Spring St.
Pensacola, FL 32501
(845) 270-3843

*Counsel for Plaintiff Michael Kascsak*

                                                          */s/ Amy Lee Dashiell*
                                                          Amy Lee Dashiell

4895-9484-7394