UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| MICHAEL KASCSAK,<br><br>*Plaintiff*,<br><br>v.<br><br>EXPEDIA, INC., AND MICHAEL DAVIS VELASCO,<br><br>*Defendants*. | Case No.: 1:23-cv-01373-DII |

**PLAINTIFF MICHAEL KASCSAK'S REPLY
IN SUPPORT OF HIS OBJECTION TO THE MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

This Court has personal jurisdiction over Defendant Michael Davis Velasco.

The Magistrate's Report and Recommendation ("Report"), Dkt.19, and Defendant Michael Davis Velasco's Response to Plaintiff Michael Kascsak's Objection ("Def. Resp."), Dkt.29, both fail to analyze personal jurisdiction under or even address *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, which finds jurisdiction when contacts are "related enough to" Plaintiff's suit. 141 S. Ct. 1017, 1031 (2021). Defendant authored a discriminatory policy scheme to be implemented in Texas, traveled to Texas to promote the discriminatory scheme, led and participated in Plaintiff's hiring process, and ordered intermediaries to tell Plaintiff, a Texas resident, he would not get the Texas job. In a conclusory footnote, the Report dismissed these facts as "general," but under *Ford Motor* they are all obviously related to Plaintiff's *discrimination* suit against the Defendant. Moreover, because the Defendant *intentionally* discriminated against Plaintiff and *initiated* the harm in Texas through that decision (including by directing an intermediary to tell Plaintiff he

1

would not get the job), this Court independently has personal jurisdiction under the Fifth Circuit's intentional tort personal jurisdiction holdings.

Separately, the Report found in Plaintiff's favor on but-for causation under 42 U.S.C. § 1981 while relying on Defendants Davis Velasco and Expedia Inc.'s framing of Plaintiff's Complaint in its analysis. While this strengthens the Report's underlying conclusion Plaintiff pleaded but-for causation, Plaintiff objects to the framing of his Complaint to protect his appellate rights.

A. **The Court has specific jurisdiction over Defendant Michael Davis Velasco.**

   i. **Defendant's discriminatory scheme in Texas, of which Plaintiff is a victim, gives the Court jurisdiction over Defendant under *Ford Motor Co.***

Defendant's Response mischaracterizes the current relevant test for personal jurisdiction as simply whether the suit "arise[s] out of" Defendant's contacts with Texas, which is a causal standard. Def. Resp. at 3, 4 & 7; *Ford Motor Co.*, 141 S. Ct. at 1026. The Report's analysis makes this same mistake in practice by disregarding jurisdictional facts as "general" and lacking a direct "nexus" with the harm. *See* Report at 7 n.2 (discarding all non-causal facts). But *Ford Motor Co.*—which Plaintiff has cited many times, *see* Pl. Obj. at 2, 4; Dkt.13, and which both the Report and Defendant ignore—clarified that the test for personal jurisdiction is whether "the suit arise[s] out of *or relate[s] to* the defendant's contacts."[1] 141 S. Ct. at 1026. That latter language—*relates to the defendant's contacts*—"contemplates that some relationships will support jurisdiction without a causal showing." 141 S. Ct. at 1026. Ultimately, the "only issue" under *Ford Motor Co.* is "whether [Defendant's] contacts are *related enough* to" Plaintiff's suit, *id.* at 1031 (emphasis added), which is considerably more permissive than the standalone "arise out of" language upon which Defendant and the Report rely. *Id.* at 1025-26.

---

[1] The Fifth Circuit applies the *Ford Motor Co.* test to individual defendants. *See DISH Network, L.L.C. v. Elahmad*, 2024 U.S. App. LEXIS 5729, *6-7 (5th Cir. 2024).

2

With *Ford Motor Co.* as the standard, Defendant's relevant contacts are "related enough" to Plaintiff's suit "in the aggregate." *Id.*; Def. Resp. at 3 (conceding jurisdiction by aggregation). The Defendant authors discriminatory policies which are implemented in only four States, including Texas, at his direction—this is a clear initiated and intentional contact. Dkt.13 at 6 (citing Complaint). In trying to distinguish Plaintiff's caselaw on this point with factual minutiae, Def. Resp. at 6, Defendant misses the bigger picture: When a corporate officer authors *discriminatory* policy and directs it to be implemented in a State, *of course* resulting *discrimination* lawsuits there are "related" to that policy. *Ford Motor*, 141 S. Ct. at 1031. Similarly, Defendant's trips to Texas diversity conferences are also "related" to Plaintiff's suit, since—as Defendant admits—they are "designed to … progress" the diversity policies at issue in Plaintiff's Complaint. Dkt.21 at 3; *see* Dkt.13 at 5 (citing Complaint). And the Defendant personally interviewed Plaintiff over video chat, so he knew Plaintiff was not diverse and lived in Texas; he also had final say in Plaintiff's interview process. Dkt.13 at 4-5 (citing Complaint).

Finally, Kristin Stencil and Lisa Christensen's calls to Texas to inform Plaintiff that Defendant canceled their discussion and ended his hiring process are contacts attributable to Defendant for two *independent* reasons. Def. Resp. at 5; Dkt.13 at 5 (citing Complaint). One, Stencil and Christensen acted as "intermediar[ies]" to communicate Defendant's adverse decisions. *See* Dkt.13 at 8-9 (citing *Slyce Acq. Inc. v. Syte-Visual Conception Ltd.*, 422 F. Supp. 3d 1191, 1201 (W.D. Tex. 2019)). Two, Stencil and Christensen are "agents" because they contacted Plaintiff on Defendant's behalf. *See Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 2021 U.S. Dist. LEXIS 94904, *19-20 (S.D.N.Y. 2021) (noting an agent "[f]or purposes of personal jurisdiction" is functional and not grounded in "the formalities of agency law"). And while Defendant argues all these Texas contacts (including those on his behalf by Christensen and

Stencil) are not relevant because they were made on behalf of Expedia, Def. Resp. at 5, "professional" "suit-related contacts … factor into the personal jurisdiction analysis." *Urquhart-Bradley v. Mobley*, 964 F.3d 36, 46 (D.C. Cir. 2020) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) and *Calder v. Jones*, 465 U.S. 783, 790 (1984)). It is a fiduciary shield issue, not personal jurisdiction, that determines whether this Court may hold Defendant liable for his acts when they are made in his professional capacity.[2]

By disregarding these facts, the Report's jurisdictional analysis implausibly suggests there is *zero* connection between Defendant's discriminatory scheme directed at Texas and Plaintiff's injury there. But *of course* these contacts are sufficiently "related" to Plaintiff's claim. *Ford Motor Co.*, 141 S. Ct. at 1031, especially since Plaintiff need only "make out only a prima facie case supporting" jurisdiction. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). Defendant cannot avoid *Ford Motor Co.* by ignoring it—the Court has jurisdiction.

**ii. Independently, the Court has specific jurisdiction over Defendant under the Fifth Circuit's personal jurisdiction standard for intentional torts.**

In his Objection, Plaintiff explains that the Report misread and misapplied the independent personal jurisdiction standard for intentional torts as elaborated in *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485 (5th Cir. 2018), *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491 (5th Cir. 2022), and *Wilson v. Belin*, 20 F.3d 644 (5th Cir. 1994). These cases demonstrate that if a defendant's relevant tortious contacts in Texas are *intentional* and *initiated* by the defendant, then personal jurisdiction is established. *See* Pl. Obj. at 4-6.

---

[2] While the Report did not address the fiduciary shield argument, Report at 7 n.3, the Parties briefed this issue already and thus the Court—after finding it has personal jurisdiction over Defendant—should also find he is not protected by the fiduciary shield. *See* Dkt.13 at 9-11.

Defendant does not contest Plaintiff's reading of *Trois/Danziger/Wilson*'s *intentional* and *initiated* framework. *See* Def. Resp. at 4. Instead, his argument is that the intentional tort avenue for jurisdiction under *Trois/Danziger/Wilson* requires that "defendant's contact with Texas" be "the conduct at the heart of the lawsuit." No disagreement there[3]—this is an intentional tort theory, so only the tortious conduct is relevant. But then Defendant's application of *Trois* to this case analyzes a fact—"Velasco's Zoom [interview] call with Kascsak" in early May, Def. Resp. at 4—that neither Plaintiff nor the Report ever suggest is tortious, never mind *dispositive* to jurisdiction under *Trois/Danziger/Wilson*.[4]

Of course Defendant's Zoom interview with Plaintiff is not "tortious" nor the crux of "this litigation"—Defendant argues against a straw man. Def. Resp. at 4. Plaintiff's Objection and the Report both center their intentional tort analysis on Defendant's "issu[ing] a directive [] to not hire" Plaintiff and "instead look for a more diverse candidate," Pl. Obj. at 5; Report at 7, which was communicated to Plaintiff *in Texas* via Christensen.[5] By this point Defendant knew where Plaintiff lived and where the harm would be felt but made the calculated decision to discriminate against Plaintiff and not hire him anyway—he was "the key [] party" whose "intentional conduct … led to this litigation." *Trois*, 882 F.3d at 491. Plaintiff only raised the original Zoom interview upon which Defendant concentrates his argument to illustrate that—unlike the later, relevant August adverse action—"when [Defendant] first interviewed [Plaintiff]" he was simply a "cog in

---

[3] For an intentional tort theory of specific jurisdiction, Plaintiff will subscribe to this standard. *But compare with supra* A (noting under *Ford Motor* jurisdiction, some "relationships will support jurisdiction without a causal showing." 141 S. Ct. at 1026).

[4] The original Zoom interview is a relevant "related" contact under *Ford Motor Co.*, however. *Supra* A.

[5] Christensen's contact is attributable to Defendant under both the "intermediary" and "agent" theories for personal jurisdiction. *Supra* A.

the Company's [standard] interview process" and thus any harm from that initial interview would be "random[ly]" directed at Texas. Pl. Obj. at 5-6 (citing Report at 9 (quoting *Walden v. Fiore*, 571 U.S. 277, 290 (2014))).

Plaintiff demonstrates that under *Trois/Danziger/Wilson*, Defendant *intentionally initiated* contact with Texas to harm Plaintiff. This proves jurisdiction under the Fifth Circuit's intentional tort line of cases. Moreover, Plaintiff's argument here is even stronger, since Defendant's failure to contest the framing of *Trois/Danziger/Wilson* or raise any relevant factual argument, *supra*, means he did not "substantially justif[y]" his argument in Response. *Johnson v. Berryhill*, 2017 U.S. Dist. LEXIS 90276, *4 (N.D. Okla. 2017) (noting the "issue was raised in plaintiff's objection to the report and recommendation, and defendant failed to respond to plaintiff's objection."). The Court has jurisdiction under *Trois/Danziger/Wilson*.

### iii. Defendant's remaining arguments against personal jurisdiction don't help him.

Defendant's Response is otherwise littered with smoke and mirrors. For example, Defendant claims Plaintiff "[h]op[es] to avoid" *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 103 (5th Cir. 2018), which *alone* allegedly demonstrates the Fifth Circuit's "*repeatedly* rejected attempts to exercise jurisdiction based on out-of-state conduct." Def. Resp. at 4 (emphasis added). But outside of a short footnote Defendant never discusses *Sangha* in his prior briefings, so it's impossible to "avoid," and anyway cases like *Lewis v. Fresne*, 252 F.3d 352 (5th Cir. 2001), and *Trois*, 882 F.3d 485—that found jurisdiction based on only a single out-of-state act—directly contradict Defendant's hyperbolic claim. Further, that Plaintiff's Complaint "would be unchanged" if "Velasco had never attended a single conference in Texas" is irrelevant. Def. Resp. at 7 & n.6. As Plaintiff has already observed, Dkt.13 at 4 n.1 & Pl. Obj. at 3 n.3, Plaintiff is free to raise new jurisdictional facts in briefings without amending his Complaint, which is how he

6

introduced Defendant's penchant for Texas diversity conferences as a means to implement the discriminatory scheme. Finally, Defendant's claim that Plaintiff "attempts to rely on Velasco's attendance at industry conferences *after* this lawsuit was filed" is a deliberate misrepresentation. Def. Resp. at 6-7 (citing Pl. Obj. at 3). Plaintiff raised *that* specific example to quote Defendant's admission the conferences aid his race-conscious hiring scheme. Otherwise, Plaintiff has already and separately provided *numerous* examples of Defendant traveling to diversity conferences in Texas *before* the lawsuit was filed. *See* Dkt.13 at 5-6.

**B.  While Plaintiff objects to Defendants Expedia and Davis Velasco's characterization of his Complaint to preserve his appellate rights, the Report's reliance on that flawed characterization only strengthens its conclusion that he pleaded but-for causation test under 42 U.S.C. § 1981.**

The Parties' disagreement over how the Report described Plaintiff's Complaint is ultimately much ado about very little: In considering Defendants' 12(b)(6) motion against Plaintiff's § 1981 claim for race discrimination, the Report relied on Defendants' mistaken framing but still ruled in Plaintiff's favor as a matter of law. Report at 10-14. Defendants claimed and the Report concurred that (1) Plaintiff pleaded discrimination "due to his race *and* sex," and (2) Plaintiff's conclusory present sense impression in his declaration that he was "discriminated against because of his race *or* his gender *or* his age" was a factual allegation. Dkt.19 at 1, 11 (emphasis added). Of course, both could be true and Plaintiff's Complaint still would be perfectly compliant with *Comcast Corp. v. NAACP*'s but-for causation test, because Plaintiff would be considered "diverse" under Defendants' hiring policies if he "[h]ad [] been Black instead of white." Report at 14 (citing 140 S. Ct. 1009, 1015 (2020)); Dkt.24 at 2-4 & 5 n.3. That ends the matter. "There's no guarantee,

however, that courts will always get it right."[6] *United States v. Sate*, 82 F.4th 387, 401 (5th Cir. 2023). Thus, Plaintiff objected to how the Report described his Complaint out of "an abundance of caution to preserve his appellate rights" in case the Report's construction of the Complaint becomes critical. Dkt.21 at 7. Defendants criticize this as "bizarre" and "awkward," Def. Resp. at 2, 9, but have no doubt—they'd be the first to insist Plaintiff waived any right to contest the Report's characterization of his Complaint if he didn't raise the issue now.

*First*, while Defendants argue otherwise, Def. Resp. at 9, the declaration's reflection about "race or sex or age" is simply not part of Plaintiff's Complaint because it is not a factual allegation. *See* Dkt.21 at 8 (making this point). This Court does "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions" in analyzing a Complaint. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). The relevant declaration statement reflects Plaintiff's present sense impression immediately after being told Defendants wanted a diverse candidate for the role, not him. That makes it a "conclusory allegation." *Plotkin*, 407 F.3d at 696. Further, the thought is "[b]ased on what [Expedia] said and [Plaintiff's] own knowledge of technology recruitment practices." Pl. Decl., Dkt.8-1 ¶ 50. This makes it an "unwarranted factual inference." *Plotkin*, 407 F.3d at 696. And as a matter of substance, Plaintiff's reflection is a legal conclusion which should be "ignore[d]" by the Court for evaluating the Complaint. *Ghedi v. Mayorkas*, 16 F.4th 456, 463 (5th Cir. 2021); *see also* Dkt.13 at 18 n.5.

Moreover, Plaintiff does not assert that "that the Court cannot consider his Declaration" as part of the Complaint—Fifth Circuit caselaw clearly says otherwise. Def. Resp. at 10. Rather, the

---

[6] While Plaintiff pleads but-for causation under *Comcast* and analogous Fifth Circuit caselaw, Report at 14 and Dkt.24 at 7-8, and a strong majority of courts have held but-for causation is not precluded when a plaintiff pleads discrimination under multiple protected characteristics, Dkt.24 at 5 n.3, an aberration like *Arora v. Nav Consulting Inc.* is always possible. 2022 WL 7426211 (N.D. Ill. 2022).

8

Defendants cannot invent and impute an age discrimination claim into Plaintiff's Complaint that he does not raise by cherry-picking conclusory impressions from his declaration. *See*, *e.g.*, *O'Connor v. Reiff*, 2024 U.S. Dist. LEXIS 22065, *6 (E.D. Pa. 2024) (one cannot "state a claim by relying solely on exhibits"); *Simmons v. Lincoln*, 2014 U.S. Dist. LEXIS 49173, *5 (E.D. Cal. 2014); *Irons v. United States Gov't*, 2021 U.S. Dist. LEXIS 184635, *7 (E.D.N.Y. 2021). Exhibits do not create allegations. *See Leonard v. Coalinga State Hosp.*, 2019 U.S. Dist. LEXIS 88170, *21 (C.D. Cal. 2019). The "court looks to the factual allegations contained" in Plaintiff's Complaint "to determine [if there is] a cognizable claim." *Id.* There are no claims of age discrimination in the Complaint.

*Second*, Plaintiff pleads his race and sex claims in the alternative. Rule 8(d) allows a party to "state as many separate claims or defenses as it has, regardless of consistency." *BlueTeam Roofing, LLC v. Piazza*, 2023 U.S. Dist. LEXIS 205199, *6 (E.D. La. 2023). Defendants criticize Plaintiff for "multiple stand-alone claims for discrimination," Def. Resp. at 10, but that is literally the result envisioned by Rule 8(d). Defendant's citation to *Arora v. Nav Consulting Inc.* makes this point for Plaintiff, because *Arora*'s analysis addressed language in the Complaint that "bundle[d] these theories of discrimination" within not only the same claim, but the same *paragraph*.[7] 2022 U.S. Dist. LEXIS 186909, *4-5 (N.D. Ill. 2022); *see* Def. Resp. at 11. This is why "Arora does not really plead *in the alternative*," Def. Resp. at 11, where Kascsak—who makes "multiple stand-alone claims"—does. Def. Resp. at 10-11.

---

[7] *See, e.g.*, *Arora*, 2022 U.S. Dist. LEXIS 186909, Dkt.10 ¶ 2 ("This action alleges [Defendants] discriminated against Mr. Arora … because of his Indian ethnicity, Indian national origin, Asian race, and his citizenship status."), *id.* ¶ 50 ("[Defendants] discriminated against Mr. Aurora and … because of their Indian ethnicity … their Asian race and Indian national origin.").

Of course, the Report duly considered the Parties' arguments regarding but-for causation and found—*while construing the Complaint as Defendants read it*—that Plaintiff pleaded but-for causation anyway. Report at 14; *see* Dkt.24. This decision is supported by *Comcast*'s express test, analogous Fifth Circuit caselaw on but-for causation, and most district courts to address this issue. Dkt.24. Nevertheless, the Report's observations about Plaintiff's Complaint are overexaggerated, so Plaintiff respectfully objects to preserve his appellate rights.

## CONCLUSION

For these reasons and those made in Plaintiff's Objection, Dkt.21, and his Response to Defendants' Objection, Dkt.24, the Court should reject the Report's recommendation as to its personal jurisdiction over Defendant Michael Davis Velasco while adopting the Report's recommendation as to but-for causation.

Respectfully submitted on this NINETEENTH of APRIL, 2024,

//s Max Schreiber_____

Alexander Liebmann, Esq.
Liebmann & Liebmann, P.A.
714 N. Spring St.
Pensacola, FL 32501
FL #1032726
alex@liebmannlaw.net
845-270-3843

Max Schreiber, Esq.*
**pro hac vice*
Of Counsel
Liebmann & Liebmann, P.A.
714 N. Spring St.
Pensacola, FL 32501
IN #37357-45
maxschreiber145@gmail.com
401-408-9370

10

**PROOF OF SERVICE**

I hereby certify that on April 19, 2024, I electronically filed the foregoing with the Clerk of the United States District Court for the Western District of Texas using the CM/ECF system and thus served these papers on Defendants' counsel.

*/s/Max Schreiber*
Max A. Schreiber
Counsel of Record
