UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **MICHAEL KASCSAK,** | § § § | |
| Plaintiff, | § § | |
| v. | § | No. 1:23-cv-1373-DII |
| | § § | |
| **EXPEDIA, INC.,** | § § | |
| Defendant. | § § | |

**DEFENDANT EXPEDIA, INC.'S OPPOSED
MOTION TO COMPEL DISCOVERY**

**INTRODUCTION AND FACTUAL BACKGROUND**

Plaintiff Michael Kascsak claims that Expedia discriminated against him based on his race (white) and gender (male) because Expedia interviewed him—but chose not to hire him—after he was laid off from his job at Google. *See generally* Dkt. 8. Among other compensation, Kascsak claims damages for alleged "emotional distress" and attorneys' fees. *Id.* ¶ 71, p. 33. Kascsak designated his wife, Jiman Kascsak, and a friend, David Krant, as witnesses to support his request for emotional distress damages, but has redacted thousands of text messages for "relevance" that he exchanged with these individuals during the relevant time period. **Ex. A**, Pl.'s Initial Discl. at 4. And Kascsak refuses to produce his fee agreements in this case despite his claim for attorneys' fees. Neither action is permitted under the Federal Rules. Expedia certifies that counsel for the parties have conferred in a good-faith attempt to resolve the matter by agreement and that no agreement could be made because Kascsak's counsel has refused to produce the requested documents.

Pursuant to Federal Rules of Civil Procedure 7 and 37, Defendant Expedia, Inc. therefore requests that the Court order Kascsak to produce:

(1) All responsive documents displaying text messages without unilateral redactions.

(2) Kascsak's fee agreement with his counsel.

**A.    Redacted Text Messages.**

Expedia served requests for production on Kascsak that include:

- "All documents and tangible things concerning any communications with any other person about the facts concerning this Lawsuit, your allegations in this Lawsuit, or complaints about your treatment by Defendants";

- "All documents reflecting . . . communications that reveal, refer, or relate to events that could reasonably be expected to significantly affect your emotion, feeling, or mental state";

- "All communications between you and any third party that reference your emotion, feeling or mental state, or events that could reasonably be expected to affect your emotion, feelings or mental state, from January 2018 to the present"; and

- "All communications between you and your wife that reference or relate to Expedia, your experience with Expedia, your emotions, feelings, or mental state, or events that could reasonably be expected to affect your emotion, feelings or mental state, from January 2018 to the present."[1]

**Ex. B, C**, RFPs (excerpted) 10, 32, 34, 36.

In response, Kascsak produced text message chains with his friends and family, including his wife and David Krant, but redacted thousands of pages of text messages, claiming that the redacted portions of the documents were "private, personal conversations" that "have no bearing or relevance on the issues in dispute in this case." **Ex. D**, Pl. Oct. 13 email; *see also* **Ex. E**, Pl. Nov. 4 letter at 1; **Ex. B**, Pl. RFP Responses (excerpted) at 1. Not only are unilateral redactions for relevance improper, but ongoing discovery in this case has revealed that Kascsak has taken an overly-restrictive view of relevance and redacted communications that are in fact relevant to Kascsak's emotional distress, his job search, and this very lawsuit. *See* **Ex. F**, Expedia Nov. 11 letter at 1-6 and **Ex. G**, Expedia Nov. 15 letter.

Kascsak's counsel also redacted thousands of pages of text messages between Kascsak and his wife—redacting all but 46 pages of the 3,000-page document, stating that "text conversations with [Kascsak's] wife have been completely redacted under marital privilege except for discussions which **directly address the issues in this case**." **Ex. C** at 1; **Ex. E** at 4. But by designating his wife as a witness to his alleged emotional distress, Kascsak has waived any marital privilege with regard to that subject matter—which is much broader than simply those texts that refer to his claims against Expedia. "[I]nformation that evidences other stressors that could have produced the alleged emotional distress is also relevant," which a number of courts have described as communications "that reveal,

---

[1] These requests were modeled after courts' suggested requests pertaining to a plaintiff's emotional distress damages claim in a discrimination case in *E.E.O.C. v. Simply Storage Mgmt, LLC*, 270 F.R.D. 430, 434-436 (S.D. Ind. 2010). *See also Robinson v. Jones Lang LaSalle Americas, Inc.*, No. 3:12-CV-00127-PK, 2012 WL 3763545, at *2 (D. Or. Aug. 29, 2012) (same).

refer, or relate to any emotion, feeling, or mental state, as well as communications that reveal, refer, or relate to events that could reasonably be expected to produce a significant emotion, feeling, or mental state." *See, e.g. E.E.O.C. v. Simply Storage*, 270 F.R.D. at 433-435 (noting that "[t]he EEOC's view that the claimants should be required to produce only communications that directly reference the matters alleged in the complaint is too restrictive."). The marital communications privilege does not justify Kascsak's redactions.

Expedia therefore seeks an order that Kascsak's text message production be produced in unredacted form. "Redaction is . . . an alteration of potential evidence and a party should not take it upon him, her or itself to decide unilaterally what" the party considers irrelevant or nonresponsive. *U.S. ex rel. Simms v. Austin Radiological Ass'n*, 292 F.R.D. 378, 386 (W.D. Tex. 2013) (Austin, M.J.) (quotation marks omitted)). And it is well established that the marital communications privilege (assuming it even applies to pretrial discovery) may give way "where one spouse affirmatively puts at issue matters that can be fully elucidated only by inquiry into marital communications." 2 *Testimonial Privileges* § 5:12 (3d ed. Feb. 2023 update).

**B.      Fee Agreements.**

Expedia also requested "[a]ll engagement letters, contracts or other documents and tangible things reflecting or concerning the agreement between you and your attorney(s) concerning their representation of you in this case." **Ex. B**, RFP 23. Kascsak, however, has refused to produce any documents responsive to this request, claiming that his agreements with counsel are "not relevant." *Id*. When pressed on the issue, Kascsak's counsel stated that he "objected to producing [the agreement(s)] on relevance grounds at this stage of the litigation." **Ex. E** at 3. There is no ground for Kascsak to withhold—or delay—production of the agreements, which are relevant to Kascsak's claim for attorneys' fees in order to allow Expedia "to assess its total liability if plaintiff prevails on [his] claim." *Hernandez v. Scott*, 2011 WL 2619342, at *1 (W.D. Tex. 2011).

**KASCSAK IMPROPERLY REDACTED PRODUCTION FOR RELEVANCE**

**A. Kascsak May Not Unilaterally Redact Parts of Documents He Deems Not Relevant or Sensitive.**

A simple, easy-to-apply rule governs here:

> Producing parties are allowed to unilaterally redact contents on the basis of privilege and work-product. . . . *Unilateral redactions on other grounds are improper.* **In particular, parties may not unilaterally redact contents they deem to be irrelevant or nonresponsive.**

1 Steven Gensler, *Federal Rules of Civil Procedure, Rules and Commentary*, Rule 34 (Feb. 2024 update) (emphases added); *accord, e.g.*, *BidPrime, LLC v. SmartProcure, Inc.*, 2018 WL 6588574, at *2 (W.D. Tex. 2018) (Pitman, J.) (citing *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 299 (N.D. Tex. 2017) ("a responding party . . . cannot redact nonprivileged information from any responsive document because the information is not itself responsiv[e]")).[2] This rule has long been "the prevailing view." Seth Katsuya Endo, *Contracting for Confidential Discovery*, 53 U.C. Davis L. Rev. 1249, 1297 (2020) (citing authorities). For good reason. As explained by this Court:

> Redaction is, after all, an alteration of potential evidence and a party should not take it upon him, her or itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case. Furthermore, it is a rare document that contains only relevant information. Oftentimes, irrelevant information within a document that contains relevant information may be highly useful to providing context for the relevant information.

*Austin Radiological Ass'n*, 292 F.R.D. at 386 (cleaned up).

Kascsak demands an exception to the rule for his documents, insisting that his redactions are allowed because text messages are special in that they "are created and stored within larger chains unbound by duration or scope, and often containing a series, or even many series, of discrete conversations." **Ex. E** at 1. Kascsak is mistaken. Courts routinely reject similar arguments that attempt

---

[2] *See also, e.g.*, *Hum. Power of N Co. v. Bryan*, 2023 WL 9007814, at *1 (W.D. Tex. 2023) (Lane, M.J.) (describing unilateral redactions for relevance as "obstructionist[]"), *report and recommendation adopted*, 2023 WL 9005602 (W.D. Tex. 2023); *Austin Radiological Ass'n*, 292 F.R.D. at 386.

to split an individual document into component parts, even in the case of text messages. Indeed, the court in *Al Thani v. Hanke* rejected this very argument, finding that the plaintiff failed to show good cause for the redaction of text messages and stating: "It cannot be left to Simm's 'unfettered discretion' to make [the responsiveness] determination." 2022 WL 1684271, at *1-*2 (S.D.N.Y. 2022).

During discovery, "relevancy is broadly construed"; the test is whether "there is any possibility that the information sought may be relevant to the claim or defense of any party." *Talley v. Spillar*, 2017 WL 9288622, at *2 (W.D. Tex. 2017) (Lane, M.J.) (quotation marks omitted). And "[w]hen the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance." *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005) (quotation marks omitted). Kascsak's pursuit of emotional-distress damages makes the scope of discovery even broader. *See id.*; *Talley* 2017 WL 9288622, at *2. Expedia "must be free to test the truth of the plaintiff's contention that []he is emotionally upset *because* of [Expedia's] conduct." *Hukman v. Sw. Airlines Co.*, 2019 WL 566451, at *3 (S.D. Cal. 2019) (cleaned up). Communications that touch on or reveal an emotion, feeling, mental state, or other stressors are relevant. *See, e.g.*, *Simply Storage Mgmt.*, 270 F.R.D. at 435-36; *Krapf v. Novartis Pharms. Corp.*, 2022 WL 2452259, at *4 (D. Minn. 2022); *Smith for J.L. v. L.A. Unified Sch. Dist.*, 2018 WL 6137133, at *2 (C.D. Cal. 2018). So are communications revealing Kascsak's demeanor during the time he claims he has suffered emotional distress. *See, e.g.*, *Idom v. Natchez-Adams Sch. Dist.*, 178 F. Supp. 3d 426, 441 (S.D. Miss. 2016); *Norwood v. Salvatore*, 2016 WL 1060299, at *15 (N.D.N.Y. 2016); *Doe v. Rose*, 2016 WL 9107136, at *1 (C.D. Cal. 2016), *aff'd*, 755 F. App'x 654 (9th Cir. 2018). It is Kascsak's burden "to demonstrate that there is no possibility that the" redacted text messages "contain information relevant to his emotional distress claim." *Westbrook v. GES Exposition Servs.*, 2006 WL 8441875, at *1 (D. Nev. 2006).

Even if Kascsak could treat some parts of undisputedly responsive documents as irrelevant, ample evidence shows his redaction process is flawed and has resulted in the redaction of texts that

are in fact relevant. After repeated deficiency letters, Kascsak made a supplemental production of previously-redacted texts messages after having "found some limited additional text communications that would be responsive to Expedia's requests." *Id.* at 3. Those previously redacted texts included relevant communications Kascsak had with his friends and family about this very lawsuit and only raised more questions about surrounding redactions. *See* **Ex. F** at 1-6. And even *after* that supplemental production and *after* Kascsak's counsel stated that she had "re-reviewed the text messages in Plaintiff's production" in order to "assure that no necessary context was redacted and no responsive communication left out,"[3] documents produced by third party David Krant revealed still more relevant but redacted texts in Kascsak's production. *See* **Ex. F** and **Ex. G**.

It is also unclear what standards Kascsak employed in deciding which texts to redact. Kascsak claims that "Expedia's adverse action severely worsened his existing diagnosed anxiety resulting in…unintentional self-harm" and that he suffered from "loss of confidence and loss of enjoyment of life" **Ex. A** at 6, and Expedia's RFPs—which are based on those suggested by the courts—ask for communications that reference Kascsak's "emotion, feeling or mental state, or events that could reasonably be expected to affect your emotion, feelings or mental state." **Ex. C**, RFPs 34, 35, 36. Yet Kascsak's counsel admits that Kascsak redacted texts that, for example, involve "private conversation between friends about personal matters wholly unrelated to this case, like dinner or a football game," **Ex. E** at 2. But those are exactly the kind of communications that may bear directly on Kascsak's claims that he suffered from emotional distress and anxiety so severe that it caused "self-harm" and resulted in his "loss of enjoyment of life." Moreover, Kascsak's counsel stated that the text message production (even with the redactions) only includes texts from March 2023. Kascsak was laid off from Google in January 2023 and has identified that layoff as a source of distress. Kascsak's text message

---

[3] **Ex. E** at 3.

production is not only improperly redacted, but it's also underinclusive because it does not include text messages from the relevant time period of, *at a minimum*, January 1, 2023 to the present.

Ultimately, there is no basis for redaction in this case, particularly where, as here, a Protective Order is in place to protect any confidentiality concerns.[4] More broadly, the Court should reject the exception for text messages that Kascsak demands because it is an *exception*. Bright-line rules are far easier to administer and reduce cost to litigants and the Court. *See Tex. Brine Co., LLC v. Am. Arb. Ass'n*, 955 F.3d 482, 486 (5th Cir. 2020); *Baker Indus., Inc. v. Howard Elec. & Mech. Inc.*, 794 F.2d 965, 966 (5th Cir. 1986). This is especially true here, given that the parties are likely to disagree on what text messages are relevant to Kascsak's alleged emotional distress and the fact that Expedia seeks text messages exchanged during a limited time period. With a protective order in place, there can be no harm to Kascsak in producing unredacted text messages and no justification for further taxing the Court's resources through challenges to individual redactions.

### B. Kascsak Has Waived the Marital Communications Privilege.

The thousands of pages of unilaterally redacted text messages between Kascsak and his wife, Jiman, raise an additional issue because Kascsak claims they were "redacted under marital privilege." **Ex. E** at 4. For these messages, Kascsak has applied a much more restrictive "relevance" standard than for his texts with friends, only producing unredacted texts with his wife that directly reference Kascsak's experience with Expedia.

Kascsak's justifications for his redactions are weak at the outset. Although "marital communications are presumptively confidential,"[5] like any other privilege, the marital

---

[4] The few decisions cited that did allow unilateral redactions are unpersuasive—none even acknowledge the contrary weight of authority, let alone consider whether some justification exists for a text-message exception. *See Aragon v. Rise L. Grp.*, 2024 WL 3290387, at *4 (D. Or. 2024); *Searcy*, 2021 WL 2912921, at *2; *Laub*, 2020 WL 7978227, at *12; *Greenbank*, 2019 WL 6522885, at *12.

[5] *Blau v. United States*, 340 U.S. 332, 333 (1951). Federal law governs application of the marital communications privilege here because Kascsak has sued on overlapping federal and state claims. *See,*

communications privilege "contravene[s] the fundamental principle that the public has a right to every man's evidence." *Trammel v. United States*, 445 U.S. 40, 50 (1980) (cleaned up). As a result, it "must be strictly construed and accepted only to the very limited extent that" limiting disclosure "has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Id.* (cleaned up). "[T]he purpose of the marital privilege is to protect the privacy of marital communications," *S.E.C. v. Lavin*, 111 F.3d 921, 933 (D.C. Cir. 1997); *see, e.g.*, *Pereira v. United States*, 347 U.S. 1, 6 (1954). Here, the Court's Protective Order, ensures that any document produced that includes confidential marital communications will remain confidential unless and until the Court allows admission of some communications at trial. Dkt. 28 at 3, 5. Merely producing documents that will stay confidential does not strike at the heart of the policy behind the marital communications privilege.

Moreover, whatever the strength of the privilege here, it gives way because Kascsak is invoking the marital communications privilege *offensively*. Kascsak made an affirmative choice to sue. Not only that, Kascsak made the choice to designate his wife as a trial witness to testify about the "effect of adverse action on Plaintiff for damages." **Ex. A** at 4. Kascsak should not be permitted to offensively have his wife testify to his alleged distress while at the same time shielding their *communications about that alleged distress*. Evidentiary privileges—including the marital privilege—are commonly waived "by electing to present" one of the communicants as a witness, which "waive[s] the privilege with respect to matters covered in his testimony." *Nobles*, 422 U.S. at 239; *see, e.g.*, *Betz v. Legal Aid Soc.*, 1990 WL 164814, at *1 (S.D.N.Y. 1990) (husband waived the marital communications privilege because of his stated intention to call his wife to testify about his emotional distress after his termination); *Burlington*

---

*e.g.*, Fed. R. Evid. 501; *Garza v. Scott & White Mem'l Hosp.*, 234 F.R.D. 617, 625 (W.D. Tex. 2005) (Sparks, J.) (surveying case law, concluding federal law applies to mixed claims unless "the evidence sought . . . applies exclusively to state law claims.").

*N. R.R. v. Hood*, 802 P.2d 458, 466 (Colo. 1990) (marital communications privilege). If a plaintiff's claims and theories have made privileged material relevant, he may not use a privilege offensively to deny an opposing party access to information important to its defense. *See Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989) (restricting offensive use of attorney-client privilege); *United States v. Premises Known as 281 Syosset Woodbury Rd.*, 862 F. Supp. 847, 854-55 (E.D.N.Y. 1994) (marital communications privilege), *aff'd*, 71 F.3d 1067 (2d Cir. 1995); *Heaney v. Associated Bank, N.A.*, 1990 WL 446707, at *29 (E.D. Wis. 1990 (marital communications privilege).[6]

      Kascsak's text messages with his wife contain relevant material that is broader than communications that "directly address the issues in this case." **Ex. E** at 4; *see Simply Storage Mgmt.*, 270 F.R.D. at 435 ("The EEOC's view that the claimants should be required to produce only communications that directly reference the matters alleged in the complaint is too restrictive. This standard likely would not encompass clearly relevant communications and in fact would tend only to yield production of communications supportive of the claimants' allegations."). Expedia's RFP for "[a]ll communications between you and your wife that reference or relate to Expedia, your experience with Expedia, **your emotions, feelings, or mental state, or events that could reasonably be expected to affect your emotion, feelings or mental state**" seeks documents directly relevant to the emotional distress that Kascsak's wife plans to testify about. The Protective Order more than adequately protects the confidentiality of these communications, and Kascsak will have the opportunity to address their trial admissibility with the Court. Shielding these communications at this stage hinders Expedia's ability to conduct discovery on Kascsak's claims and should not be permitted.

---

[6] The one case Kascsak has cited to support his invocation of the marital communications privilege recognizes the same basis for waiver. *See Wilcox v. Portfolio Recovery Assocs.*, WL 4025899, at *2 (D. Nev. June 15, 2023) ("Plaintiffs initiated this case and, consequently, exposed themselves to the discovery process.").

## KASCSAK CANNOT WITHHOLD HIS FEE AGREEMENTS

Expedia "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "[B]ecause Plaintiff is seeking to recover [his] attorneys' fees from Defendant, [his] fee agreement with [his] attorney is relevant, discoverable, and admissible." *Bustamante v. State Farm Lloyds*, 2016 WL 10655600, at *1 (S.D. Tex. 2016). Expedia therefore sought production of Kascsak's fee agreements related to the retention of nine attorneys across three law firms to represent him in this case.

Kascsak appears to concede that the agreements are relevant, but insists they are not relevant at "this stage of the litigation." *See* **Ex. E** at 3. Courts have rejected this argument. In *Hernandez*, for example, the court rejected the plaintiff's claim that information about her attorneys' fees (including the fee agreements) was "not relevant unless and until she prevails on her FDCPA claim," explaining that "[n]o authorities support such a limited reading of relevance and scope of permissible discovery." 2011 WL 2619342, at *1. The court said the fee agreements, billing records and other related documents were "discoverable now"—i.e. during the discovery period—because it "will enable defendant to assess its total liability if plaintiff prevails on her claim, which encourages 'the just, speedy, and inexpensive determination' of this dispute." *Id.* (quoting Fed. R. Civ. P. 1). Other courts say the same thing. *See, e.g.*, *Lozada-Leoni v. MoneyGram Int'l, Inc.*, 2020 WL 10046089, at *16 (E.D. Tex. July 8, 2020); *Coleman v. Credit Mgmt. LP*, 2011 WL 13128820, at *2 (N.D. Tex. 2011); *Tingey v. City of Sugar Land*, 2007 WL 9735804, at *1 (S.D. Tex. 2007). Kascsak has no grounds to withhold the fee agreements.

## CONCLUSION

The Court should grant Expedia's motion to compel and order Kascsak to produce: (1) All responsive documents displaying text messages without unilateral redactions from January 1, 2023 to the present; and (2) Kascsak's fee agreement(s) with his counsel.

Respectfully Submitted,

SCOTT DOUGLASS & McCONNICO LLP
303 Colorado, Suite 2400
Austin, Texas  78701-2589
512-495-6300
512-495-6399 Fax

By:     */s/ Amy Lee Dashiell*
       David D. Shank
       Texas Bar No. 24075056
       dshank@scottdoug.com
       Amy Lee Dashiell
       Texas Bar No. 90001564
       adashiell@scottdoug.com
       Lauren Ditty
       Texas Bar No. 24116290
       lditty@scottdoug.com

*Counsel for Defendant Expedia, Inc.*

## CERTIFICATE OF SERVICE

I certify that on November 25, 2024, I served a copy of the foregoing on the parties listed below by CM/ECF.

Alexander Liebmann, Esq.
Max Schreiber
Liebmann & Liebmann, P.A.
714 N. Spring St.
Pensacola, FL 32501

Adam P. Laxalt
Brian W. Barnes
Nicole J. Moss
Samuel D. Adkisson
Cooper & Kirk, PLLC
1523 New Hampshire Ave NW
Washing, DC 20036

Jacob Meckler
Nicholas R. Barry
America First Legal.
611 Pennsylvania Ave SE #231
Washing, DC 20003

*Counsel for Plaintiff Michael Kascsak*

                                                                           */s/ Amy Lee Dashiell*
                                                                           Amy Lee Dashiell

## CERTIFICATE OF CONFERENCE

Expedia certifies that counsel for the parties have conferred in a good-faith attempt to resolve the matter by agreement, both in writing (*see* Ex. D, E, F, G) and by video call on November 18, 2024, and that no agreement could be made because counsel for Plaintiff has refused to produce the requested documents.

                                                                           */s/ Amy Lee Dashiell*
                                                                           Amy Lee Dashiell