UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **Michael Kascsak**, | § § § § | |
| Plaintiff, | | |
| v. | § § | No. 1:23-cv-1373-DII |
| **Expedia Group, Inc.**, | § § § § | |
| Defendants. | | |

**DEFENDANT EXPEDIA, INC.'S RESPONSE TO
<u>PLAINTIFF'S SECOND MOTION TO COMPEL DISCOVERY</u>**

4924-2807-9365

## I. INTRODUCTION

With his Second Motion to Compel (Dkt. 81), Kascsak continues his quest to seek documents well outside the bounds of relevant and proportional discovery. The documents and information that Kascsak seeks lack any connection to the issue that the jury must determine in this case: Was Kascsak not hired for the Senior Director of Global Sourcing position at Expedia because of his race (white) and/or his gender (male)?

Expedia has responded to over 100 requests for production, producing not only all documents related to Kascsak, all documents related to the hiring for the Global Sourcing position and the other candidates considered for the position, and all of its corporate Inclusion and Diversity (I&D) policies (over 4,000 documents consisting of more than 21,000 pages), but further, pursuant to the Court's rulings on Plaintiff's Motion to Compel, produced over 6,000 *additional* documents consisting of over 30,000 additional pages of emails, communications and attachments *related to* Expedia's general I&D policies over a two-year period. Expedia has in total produced over 10,000 documents of over 50,000 pages in connection with this single plaintiff who interviewed for one position at Expedia in 2023 and was not hired.

To the extent Expedia's "corporate mindset" is relevant, it is set forth in the 50,000 pages of documents that have been produced. As set forth below, Plaintiff's request for even more information (inappropriately through the guise of documents requests) is completely untethered to any relevant issues in this case and should be denied.

## II. ARGUMENT

"[F]ederal discovery is not a fishing license whereby a plaintiff may simply fish for some evidence of wrongdoing." *SC Shine PLLC v. Aetna Dental, Inc.*, No. SA-22-CV-0834-JKP, 2023 WL 4216989, at *5 (W.D. Tex. June 26, 2023). To be discoverable, the requested documents must be both "relevant to any party's claim or defense" and "proportional to the needs of the case." Fed. R. Civ. P.

26(b)(1). And a document is only relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401.

Kascsak seeks to compel Expedia to produce documents in response to Requests for Production 94, 96, and 99. Its Motion should be denied. As set forth below, Kascsak has failed to show how the private contact information of former Expedia employees who left Expedia *for any reason* during an 18-month period is relevant much less proportional to the needs of the case, particularly given the privacy issues at play. Further, documents relating to any referral awards given at Expedia (again, for any reason) or related to any hiring process that may have been "paused, suspended, delayed, and/or put on hold" for any of its thousands of hires in the U.S. and abroad likewise bear no relevance to the issues in this case and certainly fail the test of proportionality. Allowing such expansive discovery would topple the careful balancing struck by the federal discovery rules and leave Kascsak with no remaining guardrails.

> **A.  Kascsak has not shown how former Expedia employees' contact information is relevant or proportional to the needs of the case, much less that it outweighs the privacy interests at play.**

RFP 94 seeks documents "sufficient to identify" any individuals in Expedia's Global Talent Acquisition ("GTA") Group whose "employment ended" between June 1, 2022 and December 31, 2023. As a threshold matter, Kascsak improperly seeks to circumvent the Court's 25-interrogatory limit by attempting to disguise an interrogatory seeking the names of former employees as a request for production by seeking "documents sufficient to identify" the names of those former employees. *See* Fed. R. Civ. P. 33(a); 8B Wright, Miller & Kane, Fed. Prac. & Proc. Civ. § 2168.1 (3d ed.) ("[E]fforts to use other devices such as requests for admissions to circumvent the limitation on number of interrogatories has been rejected."); *Baker v. Cnty. of Missaukee*, No. 1:09-CV-1059, 2013 WL 5786899, at *4 (W.D. Mich. Oct. 28, 2013) ("Parties cannot avoid the limits on the number of interrogatories

authorized under Rule 33(a)(1) or a specific limitation in a case management order by labeling an interrogatory as a request for admission or a request for production of documents.").[1]

More importantly, Kascsak fails to demonstrate how the private contact information of any member of Expedia's Talent Acquisition team who left Expedia for any reason over an 18-month period is relevant to the issues in this case. Kascsak claims he is entitled to this information because documents produced in discovery "allege that individuals were fired because they failed to meet Expedia's race and sex-based hiring requirements." Mot. at 5. Kascsak's reference is to an "anonymous" email sent to Expedia on February 18, 2023, two months prior to Kascsak's application process, that claims that "People have been fired for not hitting these targets."[2] But Kascsak's request is not limited to the contact information of individuals who, taking the anonymous email at face value, were allegedly "fired for not hitting these targets." Mot. at 4. He demands the contact information of *every single* former Talent Acquisition team member who left Expedia *for any reason*. And Kascsak admits he does not just want their contact information—he wants to pry into the reasons why each and every one of these employees left Expedia. Mot. at 4. That will inevitably subject former Expedia employees with no connection to the hiring decision in this case to discovery requests and depositions. The individuals involved in Kascsak's interview process—the sourcer, recruiter, interviewers and decision-makers—have all been identified by Expedia and are set to be deposed. Allowing Kascsak to obtain the contact information of Expedia's former employees so Kascsak can "verify" the reasons they left

---

[1] *Accord, In re Olympia Holding Corp.*, 189 B.R. 846 (Bankr. M.D. Fla. 1995) ("Requests for admissions and interrogatories are not interchangeable procedures, and utilization of interrogatories disguised as requests for admissions in attempt to circumvent rules limiting number of interrogatories is an abuse of the discovery process.").

[2] *See* EXP_00021455 submitted *en cameral* by Kascsak on 2-18-23.

Expedia will impose a significant burden on nonparties with no relevant knowledge and far exceeds the needs of this case.[3]

Kascsak's own cases acknowledge the need for this kind of balancing and provide no support for compelling the contact information for each and every GTA employee who left Expedia over an 18-month period, for any reason, regardless of whether their departure had any connection to the dispute in this case. *See* Mot. at 7-8 (citing cases).[4] The Court must balance the person's "legitimate claims of privacy against the need of the opponent for the discovery." *Choate v. State Farm Lloyds* (Mot. at 7) *quoting Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D.Cal.1995). And even when courts resolve that balancing in favor of disclosure, they cabin the disclosure of private information to employees with relevant knowledge. *See, e.g., Hitchcock* at *5 (allowing discovery of information on employees who "witnessed this incident, rendered assistance to, came in contact with, or engaged in conversation with plaintiff"); *Choate* at *3 (allowing discovery in insurance dispute of other policyholders who had complained of the alleged wrongdoers work); *Snodgrass* at *1 (ordering disclosure of "similarly-situated co-workers who received telework authorization from Plaintiff's supervisors, when she was not approved for the same"); *Ellison* at *3 (finding that contact information regarding employees "who

---

[3] Importantly, the allegation made in the anonymous email was made months before interviews for the Global Sourcing position commenced. Any individuals who were allegedly "fired" for the reason hypothesized in the anonymous email were not involved in the hiring process for the position at issue.

[4] *Hitchcock v. Steak N Shake, Inc.*, No. 5:16-CV-922-XR, 2017 WL 11037126 (W.D. Tex. May 25, 2017); *Choate v. State Farm Lloyds*, No. 3:03-CV- 2111-M, 2005 WL 1109432 (N.D. Tex. May 5, 2005); *Snodgrass v. Esper*, No. 18-CV-00450, 2020 WL 5265126 (D. Md. Sept. 3, 2020); *EEOC v. Lowe's HIW, Inc.*, No. 2:08-CV-0331-JCC, 2008 WL 11343686 (W.D. Wash. Dec. 23, 2008); *Strauss v. Rent-A-Ctr., Inc.*, No. 6:04-CV- 1133-ORL-22KRS, 2007 WL 2010780 (M.D. Fla. July 6, 2007); *EEOC v. Club Demonstration Servs., Inc.*, No. 1:19-CV-0007-HRH, 2020 WL 5585060 (D. Alaska Sept. 16, 2020); *Ellison v. Patterson-UTI Drilling Co.*, No. 6:08-cv-67, 2009 WL 3247193 (S.D. Tex. Sept. 23, 2009)

were employed on the oil rigs where Plaintiff worked and who may have heard racial slurs or been subjected to similar remarks [as those alleged] will be highly relevant to Plaintiff's case").[5]

In fact, courts have concluded that broad requests for the private contact information of individuals with no connection to the disputed issues represent nothing but a fishing expedition. *See, e.g., Gen. Steel Domestic Sales, LLC v. Chumley*, 129 F. Supp. 3d 1158, 1166–67 (D. Colo. 2015) (holding that "a wholesale request for the identities of all of General's employees in certain categories, simply in the hopes that interviewing them might lead to additional discoveries, is indeed an overbroad request properly characterized by the Magistrate Judge as a fishing expedition."); *Brighton Collectibles, Inc. v. Marc Chantal USA, Inc.*, No. 06CV1584-H (POR), 2008 WL 11339959, at *1 (S.D. Cal. Feb. 20, 2008) ("After carefully balancing the interests of both parties, the Court finds Brighton has not demonstrated a 'compelling' need for the contact information that outweighs the privacy rights of Marc Chantal's former employees and former independent sales representatives."). Kascsak's motion to compel this information should be denied.

**B.      Kascsak fails to establish how Expedia's referral awards are relevant to the issues in this case.**

In RFP 96 Kascsak seeks documents "*sufficient to show* any referral awards given at Expedia from January 2022 to November 2023," Mot. at 8-9 (emphasis added). This request is overbroad and wholly fails to identify or seek any relevant documents. As Kascsak was not hired, there is no "referral bonus" relevant to his claims, nor was any referral bonus given in connection with the eventual hire of Patrick Sullivan, a white male, for the Global Sourcing position in July 2024. *See* Expedia Resp. to RFP 96, Dkt. 81-1, at 9.

---

[5] Kascsak's other cases are likewise unpersuasive. *Lowe's HIW, Inc.* has never been cited as authority since its issuance in 2008 and the plaintiff was seeking "comparator evidence." 2008 WL 11343686 at *6-7. In *Club Demon. Serv., Inc.*, the plaintiff properly propounded an *interrogatory* and the defendant made no objection to the disclosure. 2020 WL 5585060 at *6.

Kascsak's claim that these referral awards are relevant because "how many of these awards were paid, to whom, and for how much is related to Expedia's DEI initiatives, its hiring processes and its corporate mindset" fails to pass muster. Mot. at 4. Expedia has agreed to produce documents reflecting its referral bonus policy during this time period. Any marginal relevance of this policy (which Expedia disputes given that it had no application to the Global Sourcing role) is satisfied by the policy itself. Responding to Kascsak's request would require Expedia to determine which of its more than 7,300 hires[6] during the requested 2022-2023 time period resulted in payment of a referral bonus, and then to produce documents "sufficient to show" that bonus, whether it was given in connection to any so-called "diversity hire" or not. This request has no connection to Expedia's decision not to hire Kascsak and his Motion to Compel regarding RFP 96 should be denied.

### C. Kascsak's request for documents regarding any hiring practices that were "delayed" not only seeks documents that are not relevant, but also is impossibly vague, overbroad, unduly burdensome and disproportionate to the needs of the case.

RFP 99 asks Expedia to produce documents "regarding any Expedia hiring or contracting process that was paused, suspended, delayed, and/or put on hold" due to Expedia's "diverse slate requirement" from January 1, 2022 to present. *See* Dkt. 81-1 at 10. This request is impossibly vague, overbroad, unduly burdensome, outside the bounds of relevant discovery, and not proportionate to the needs of the case. Expedia hired over 9,000 employees[7] in the requested almost 3-year time period. Plaintiff's request would require Expedia to determine, for those thousands of hires—and potentially any *non*-hires, whether the process for each of those hires was "paused, suspended, delayed, and/or put on hold because of Expedia's diverse slate requirement…even if the diverse slate requirement was not the sole or exclusive basis" for the alleged delay. First, it would be impossible for Expedia to

---

[6] Over 3,700 US employees and over 3,600 non-US employees.

[7] Over 4,500 US employees and over 5,000 non-US employees

determine whether a process was "paused, suspended, delayed, and/or put on hold" because each hiring process is unique and there is no set timeline or standard for how long it should take. Second, even assuming Expedia could identify hires that were "delayed," it is further impracticable and near impossible to determine the reason for that delay without a personal inquiry into each and every hiring process. This request is far outside of the bounds of proportionality given that it has no relevance to this disputes.

Finally, not only would Kascsak's request require Expedia to individually examine each and every hiring decision, it would not result in any relevant documents. The "diverse slate requirement" that Kascsak seeks to explore was not even in place during Kascsak's application and interview process. Further, Kascsak's request encompasses thousands of hiring decisions made in different divisions, by different sourcers, recruiters and hiring managers, and involving different hiring processes and circumstances, than those at issue here. The fact that any particular hiring process was "delayed" in any of these over 9,500 hiring processes has no bearing on whether Expedia discriminated against Kascsak in his own hire. They are completely unrelated to the Kascsak hiring decision and outside the bounds of permissible discovery.

### III.   CONCLUSION

This is not a class-action discrimination case. It is a single failure to hire case. The Court has already widened the margins of permissible discovery in this case to allow Kascsak to discover additional context surrounding Expedia's inclusion and diversity policies, including communications between individuals about Expedia's diversity goals and processes who had no involvement in Kascsak's hiring decision. But Kascsak's latest round of discovery requests continues to move further afield from the actual hiring decision at issue and is a transparent attempt to dredge the lake in the hopes of finding a fish. Kascsak does not need to "verify" why every single one of Expedia's former GTA employees left Expedia to try this single failure to hire case. He does not need to know about

every single referral award given at Expedia during a period in which Expedia hired over 7,300 people. And he certainly does not need—nor could Expedia possibly search for and produce—documents showing whether or not the unique hiring process for over 9,500 employees hired over the 3-year time period was "paused, suspended, delayed, and/or put on hold" because of a diverse slate requirement that was not even in place at the time Expedia chose not to hire Kascsak. The Court should deny Kascsak's motion.

Respectfully submitted,

SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701
(512) 495-6300 Telephone
(512) 495-6399 Facsimile

By: */s/ Amy Lee Dashiell*
    David D. Shank
    Texas Bar No. 24075056
    dshank@scottdoug.com
    Amy Lee Dashiell
    Texas Bar No. 90001564
    adashiell@scottdoug.com
    Robert P. Earle
    Texas Bar No. 241245566
    rearle@scottdoug.com

## **CERTIFICATE OF SERVICE**

I certify that on the 13th of December, 2024, I served a copy of the foregoing on the parties listed below by CM/ECF.

Alexander Liebmann, Esq.
Max Schreiber
LIEBMANN & LIEBMANN, P.A.
714 N. Spring St.
Pensacola, FL 32501

Adam P. Laxalt
Brian W. Barnes
Nicole J. Moss
Samuel D. Adkisson
COOPER & KIRK, PLLC
1523 New Hampshire Ave NW
Washing, DC 20036

Jacob Meckler
Nicholas R. Barry
AMERICA FIRST LEGAL.
611 Pennsylvania Ave SE #231
Washing, DC 20003

*Counsel for Plaintiff Michael Kascsak*

/s/ *Amy Lee Dashiell*
Amy Lee Dashiell